# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11 |
| Texoma Peanut Company | ) | Case No. 14-81334 |
| Clint-Co Peanut Company | ) | Case No. 14-81335 |
| Clint Williams Company-Western Division LLC | ) ) | Case No. 14-81336 |
| Debtors. | ) ) | Jointly Administered |

## MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 105 AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CRITICAL TRADE CREDITORS

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THIS DOCUMENT CAREFULLY AND CONSULT YOUR ATTORNEY ABOUT YOUR RIGHTS AND THE EFFECT OF THIS DOCUMENT.** A HEARING WILL BE CONDUCTED ON THIS MATTER AT THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF OKLAHOMA, ON NOVEMBER 10, 2014, AT 10:00 A.M., AT 111 W. 4TH STREET, OKMULGEE, OKLAHOMA. IF YOU DO NOT WANT THE COURT TO GRANT THE REQUESTED RELIEF, YOU MUST FILE A WRITTEN RESPONSE OR OBJECTION SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF OKLAHOMA, 111 W. 4TH STREET, OKMULGEE, OKLAHOMA 74447. IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST SERVE A FILE-STAMPED COPY OF YOUR RESPONSE OR OBJECTION ON THE SIGNING ATTORNEY AND TO ANY OTHER PARTY SPECIFIED. IF NO RESPONSE OR OBJECTION IS TIMELY FILED, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED WITHOUT HEARING.

EXPEDITED RELIEF AND AN EXPEDITED HEARING HAVE BEEN REQUESTED. IF THIS COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS TIME TO RESPOND. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE

EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT AND IMMEDIATELY SERVE A COPY OF YOUR RESPONSE ON COUNSEL FOR THE DEBTORS AND ON ANY OTHER PARTY SPECIFIED.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

Texoma Peanut Company, Clint-Co Peanut Company and Clint Williams Company-Western Division LLC (collectively, the "Debtors"), debtors and debtors-in-possession, hereby respectfully move this Court for entry of an order granting them the authority to pay prepetition claims of critical trade creditors and service providers set forth on Exhibit "1" ("Critical Trade Creditors") in the ordinary course of business. This motion is based, in part, on the Declaration of Alan Ortloff, President of Texoma Peanut Company *et al.*, in Support of TPC's Chapter 11 Petitions and First Day Motions, sworn to on November 6, 2014 (the "First Day Declaration"), which sets forth a description of the Debtors' businesses, the reasons for filing these chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11. Debtors adopt and incorporate herein the First Day Declaration in its entirety. Debtors also show the Court:

## JURISDICTION AND STATUTORY PREDICATE

1. This Court has jurisdiction of this motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. Venue of these cases and of this motion in this district are proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicate for the relief sought herein is 11 U.S.C. § 105.[1]

---

[1] All references to sections or codes, unless otherwise noted, are made to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and referred to herein as the "Bankruptcy Code".

## BACKGROUND

4. On November 6, 2014 (the "Petition Date"), Debtors filed their respective voluntary petitions for relief under chapter 11 the Bankruptcy Code. Texoma Peanut Company ("TPC") owns 100 percent of Clint-Co Peanut Company ("CPC") and 99 percent of Clint Williams Company-Western Division LLC ("CWC").

5. Debtors continue in possession of their properties and the management of their businesses as a debtors-in-possession pursuant to § 1107 and § 1108 of the Bankruptcy Code. No trustee, examiner or official committee has been appointed herein.

6. TPC was incorporated by Clint Williams in 1961 as a southern Oklahoma bulk peanut drying, handling, and storage operation, buying and storing peanuts for area shellers. In 1968 CWC was established and incorporated as a sheller and processor of peanuts for both seed and edible markets. Although CWC was later merged into TPC, CWC continues to operate its processed peanut business under the "Clint Williams Company" name which is the name known best in the domestic and international peanut industry. TPC constructed a state-of-the-art custom processing facility in Madill, Oklahoma in which TPC produces company-owned blanched peanuts (skins removed) as well as custom cleaned and/or blanched peanuts for other customers. TPC also produces processed raw shelled and processed raw in-shell peanuts as its main product line sold and shipped all over the world. TPC processes roughly 100,000 tons or more of "farmers' stock" peanuts annually, resulting in annual domestic and international sales of over $100 million. As of the Petition Date the Debtors collectively employ 340 people.

## RELIEF REQUESTED

7. By and through this motion, Debtors request authority to pay, in their discretion, prepetition Trade Claims[2] of the Critical Trade Creditors in accordance with the terms contained herein. Debtors have carefully analyzed the available suppliers and vendors and have determined the suppliers and vendors that are critical and necessary to the continued operation of Debtors' businesses based on the goods and services supplied and the availability of other sources of supply of similar cost and quality. The Critical Trade Creditors are listed on Exhibit "1" to this Motion and Debtors only seek to pay those Critical Trade Vendors listed on Exhibit "1". Debtors estimate that the maximum amount of prepetition Trade Claims to be paid pursuant to this motion is approximately $3.1 million, which represents only a small fraction of Debtors' estimated total liabilities as of the Petition Date of $45 million. The relief requested in this motion, if granted, will enable Debtors to continue to receive, on ordinary trade credit terms, the essential goods and services that are the lifeblood of its business and permit it to preserve its going concern value. Some of the Critical Trade Creditors may assert reclamation rights under § 546 of the Bankruptcy Code. The relief requested in this Motion is intended to obviate uncertainty and litigation over such issues.

### I. PROPOSED CONDITIONS TO RECEIVE PAYMENT

8. Debtors propose to pay the prepetition Trade Claims of each Critical Trade Creditor that agrees to continue to supply goods and/or services to Debtors on such Trade Creditor's Customary Trade Terms.[3] However, if such Critical Trade Creditor later refuses to continue to

---

[2] A "Trade Claim" is defined as any claim (as such term is defined in § 101(5) of the Bankruptcy Code) of any entity against Debtors for goods or services provided in the ordinary course by such entity to Debtors.

[3] As used herein, "Customary Trade Terms" means, with respect to a Critical Trade Creditor, (a) the trade terms and practices (including allowances) in effect between such Critical Trade Creditor and

2633611.1    4

supply goods and/or services to Debtors on Customary Trade Terms during the cases, then on motion by any party in interest and with the Court's approval, (a) any payment of a prepetition Trade Claim made by Debtors pursuant to this Court's Order shall be deemed to be a post-petition advance which Debtors may recover from such Trade Creditor in cash or in goods or by setoff and (b) upon any such recovery by Debtors, the prepetition Trade Claim of such Trade Creditor paid after the Petition Date shall be reinstated in the amount so recovered.

9. To ensure that Trade Creditors deal with Debtors on Customary Trade Terms, Debtors propose: (a) the dishonor by Debtors' banks of all checks issued by Debtors in payment of a prepetition Trade Claim that have not previously been honored; (b) the payment of all prepetition Trade Claims by checks issued by Debtors, in their capacity as debtor-in-possession, on or after the Petition Date; (c) the inclusion with all checks so issued of a copy of any order granting this Motion; and (d) the inclusion on each check used to pay the holder of any prepetition Trade Claim of a legend substantially in the following form:

> "By accepting this Check, you acknowledge receipt of notice and agree to the terms of the Order of the U.S. Bankruptcy Court for the Eastern District of Oklahoma, dated _____, 2014, in Texoma Peanut Company's Chapter 11 case, entitled "Order Authorizing Payment of the Prepetition Claims of Critical Trade Creditors" and submit to the jurisdiction of that Court for enforcement thereof."

10. Debtors reserve the right to obtain written confirmation of the trade terms to be supplied by a Critical Trade Creditor before making any payment on its Trade Claim. If Debtors request such confirmation, they may rely upon a confirming memorandum setting forth the trade

---

Debtors prepetition, or (b) such other trade terms as agreed to by Debtors in the exercise of their business judgment and such Critical Trade Creditor.

terms, whether received by telefax, telex, telegram, express mail, or by any other customary modes of delivery. Debtors also reserve the right to contest any invoice of a Critical Trade Creditor pursuant to applicable non-bankruptcy law.

## II. AUTHORITY FOR RELIEF REQUESTED HEREIN

11. Although § 549(a)(2)(B) of the Code prohibits Debtors from paying prepetition claims without Court approval, the Court has power to permit a debtor-in-possession to pay certain prepetition indebtedness prior to ultimate distribution to other creditors under a plan of reorganization. This Court's general equitable powers are codified in § 105(a) of the Code which authorizes the Court to "issue an order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R,. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *Miltenberger v. Logansport, Ry. Co.,* 106 U.S. 286 (1882)). Such use of the Court's equitable powers, commonly referred to as the "doctrine of necessity" or the "necessity of payment rule", is not new; its purpose is to preserve the debtor as a going concern. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Under § 105(a), a court "can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R., 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere*, *supra* at 176). Debtors strongly believe continuous and uninterrupted shipments and services from Critical Trade Creditors on Customary Trade Terms are imperative to the Debtors' reorganization and that the payment of the Trade Claims as requested herein is critical, necessary and essential to assure such result.

12. The "necessity of payment" rule "recognizes the existence of the judicial power to authorize a debtor in reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, *supra* at 176; *Michigan Bureau of Workers Disability Compensation v. Chateaugay Corp. (In re Chateauguay Corp.)*, 80 B.R. 279 (S.D.N.Y. 1987). This rule is consistent with the paramount goal of chapter 11, *i.e.*,"facilitating the continued operation and rehabilitation of the debtor . . ." *Ionosphere Club*, 98 B.R at 176.

13. It is not uncommon for courts to authorize payments to vital suppliers and trade creditors. *See, e.g., In re Allis-Chalmers Corp.*, Case No. 87 B 11225 (Bankr. S.D. N.Y. August 24, 1987) (court authorizes debtor to pay prepetition warranty claims); *In re Wilson Foods Corp.*, Case 83-01034A (Bankr. W.D. Okla. 1983) (debtor authorized to spend in its discretion a sum not to exceed $5 million in the aggregate to pay essential pre-chapter 11 obligations); *see also Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945), *cert. denied*, 325 U.S. 873 (1945) ("[t]he expenses of continued operation of a business may be necessary to preserve its value for the secured creditors themselves, and for that reason that the receiver's creditors have priority, so it may be before insolvency. To take the case at bar, upon the continued operation of a hotel its goodwill depends; let it once shut down, and it will lose much of its value. . . Some priority [to the hotel's prepetition suppliers] may be essential to preservation of the business."); *In re UNR Industries, Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) ("Necessity Doctrine may be used to permit a debtor to pay the pre-petition claims of suppliers or employees whose continued cooperation is essential to the debtor's successful reorganization."), *rev'd on other grounds, UNR Industries, Inc. v. Bloomington Factory Workers*, 173 B.R. 149 (Bankr. N.D. Ill. 1994); *In re Just For Feet, Inc.*, 224 B.R. 821, 826 (D. Del. 1999) (authorizing payment of prepetition claims of trade creditors that continue customary trade

terms); *In re Discovery Zone, Inc. et al.*, Case No. 99-941 (JJF) (D. Del. April 21, 1999) (critical vendor payments); *In re Acme Steel Company, et al.*, Case No. 98-2179 (MFW) (Bankr. D. Del. June 10, 1998) (critical vendor payments).

### III. PAYMENT OF PREPETITION TRADE CLAIMS IS CRITICAL TO DEBTORS' REORGANIZATION

14. Debtors believe payment of prepetition Trade Claims of Critical Trade Creditors is essential, necessary and critical to a successful reorganization. Debtors are engaged in the business of buying, processing and selling peanuts for consumption and for use in agriculture. The goods and services provided by the Critical Trade Creditors are essential to ensuring that Debtors have access to sufficient quantities of inventory and are able to process, package and ship perishable peanuts in a timely and efficient manner. Any business interruption caused by the reluctance of Critical Trade Creditors to continue providing goods and services will have disastrous effects on Debtors' going concern value and would jeopardize Debtors' chances for reorganization.

15. If the relief requested herein is not granted, Critical Trade Creditors are likely to, at a minimum, delay supplying Debtors at a time when it is critical that Debtors have access to inventory and have the ability to continue their operations. Further, without the requested relief, Critical Trade Creditors will have no incentive to continue to finance Debtors on past trade terms.

16. The continued uninterrupted supply of goods and services and availability of trade credit in amounts and on terms consistent with those which Debtors enjoyed prepetition are necessary and critical for Debtors to maintain liquidity for operations and continued satisfactory levels of operating profitability. Debtors believe that preservation of working capital resulting from the assurance of uninterrupted supplies, and the retention or reinstatement of historic trade credit

terms will enable Debtors to maximize the value of their businesses. Conversely, a downgrading of credit and other business practices and a disruption or cancellation of deliveries of goods would hinder Debtors' operations and severely undermine Debtors' ability to reorganize successfully. Additionally, the requested relief will avert and resolve needless disputes, uncertainty and litigation that otherwise could arise over Critical Trade Creditors' reclamation demands under §546 of the Bankruptcy Code. Avoiding the time and expense of evaluating and litigating such claims will benefit the Debtors and their estate.

17. Simply put, the failure to pay prepetition Trade Claims of Critical Trade Creditors would damage Debtors, their estates, their creditors and other parties in interest. Debtors would face interruptions of deliveries of essential goods and would lose an affordable source of financing which is already in place. Indeed, failure to pay prepetition Trade Claims may result in many Critical Trade Creditors ceasing to do business with Debtors. Either of these occurrences could prolong these chapter 11 cases and seriously undermine the reorganization effort.

18. Nothing in this motion should be construed as an assumption of any executory contract or unexpired lease between Debtors and any of their Trade Creditors, nor should it be construed as a rejection of any executory contract or unexpired lease with any Trade Creditor. Furthermore, Debtors reserve the right to contest on non-bankruptcy grounds the amount claimed to be due by any of the Trade Creditors in the ordinary course of business.

## NOTICE AND PRIOR APPLICATION

19. Notice of this Application has been provided to: (a) the Office of the United States Trustee for the Eastern District of Oklahoma; (b) those entities or individuals listed on the Debtors' lists of their twenty largest unsecured creditors; (c) all secured creditors and their counsel (if known);

(d) all applicable state and local taxing authorities; (e) the Critical Trade Creditors; and (f) the parties in interest who have formally requested notice by filing a written request for notice pursuant to FED. R. BANKR. P. 2002 and the local bankruptcy rules. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

20. No prior motion for the relief requested herein has been made to this Court.

**CONCLUSION**

WHEREFORE, Debtors request that this court enter an order authorizing Debtors to pay the Trade Claims of those Critical Trade Creditors set forth on Exhibit "1" on the terms requested in this motion and granting such other relief as the Court deems just.

**CROWE & DUNLEVY**

*/s/Mark A. Craige*_____
Mark A. Craige, OBA No. 1992
Michael R. Pacewicz, OBA No. 18794
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma 74103-3313
918.592.9800 Telephone Number
918.592.9801 Facsimile Number
e-mail: mark.craige@crowedunlevy.com
michael.pacewicz@crowedunlevy.com

and

William H. Hoch, OBA No. 15788
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
405.235.7700 Telephone Number
405.239.6651 Facsimile Number
e-mail: will.hoch@crowedunlevy.com

*Attorneys for Debtors In Possession*