**Dated: November 10, 2014**
**The following is ORDERED:**

**The Movant is directed to notify all interested parties.**



_(signature)_
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

```
-----------------------------------------------------------x
                                            :
In re                                       :   Chapter 11
                                            :
TEXOMA PEANUT COMPANY, et al.,              :   Case No. 14-81334 (TRC)
                                            :
              Debtors.¹                      :   Jointly Administered
                                            :
                                            :   Ref. Docket No. ___
-----------------------------------------------------------X
```

### INTERIM AGREED ORDER AUTHORIZING LIMITED USE OF CASH COLLATERAL, OBTAINING POST-PETITION CREDIT SECURED BY SENIOR LIENS, AND GRANTING ADEQUATE PROTECTION TO EXISTING LIENHOLDERS

**CAME ON FOR CONSIDERATION** the _Motion for Interim and Final Orders (A) Authorizing the Debtors to Use Cash Collateral, (B) Authorizing the Debtors to Obtain Post-Petition Financing, (C) Granting Security Interests and Superpriority Administrative Expense Status to the Lender, (D) Granting Adequate Protection to Existing Lienholders; (E) Scheduling a Final Hearing; and (F) Granting Related Relief_ (the "Financing Motion") filed by the above-

---

¹  The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Texoma Peanut Company ("Texoma"); Clint-Co Peanut Company ("Clint-Co"); and Clint Williams Company-Western Division LLC ("Clint Williams").

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main
Document   Page 1 of 50

captioned debtors, as debtors-in-possession (collectively, the "Debtors"), seeking, *inter alia*, pursuant to Sections 105, 361, 362(d), 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 503(b), and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the following:

    (i)    authority for the Debtors to obtain post-petition loans and other extensions of credit from Wells Fargo Bank, N.A. ("Lender") in an amount not to exceed $12,700,000.00 on an interim basis, and $40,500,000.00 on a final basis, cumulative of any amounts advanced on an interim basis (the "DIP Commitment"), and including, without limitation, principal, other extensions of credit and financial accommodations, interest, fees, expenses, and other costs of Lender in these bankruptcy cases (collectively, the "Cases"), in accordance with the terms and conditions set forth herein and in the attached Senior Secured Super-Priority Debtor-in-Possession Credit Agreement (the "DIP Agreement"),[2] the other Loan Documents (as defined in the DIP Agreement), and all other related agreements and documents (collectively, the "DIP Facility");

    (ii)    authority for the Debtors to execute, deliver, and perform under the DIP Facility and Loan Documents, and all other related agreements and documents creating, evidencing, or securing indebtedness or obligations of any of the Debtors to the Lender on account of the DIP Facility or granting or perfecting liens or security interests by any of the Debtors in favor of and for the benefit of Lender on account of the DIP Facility, as same now exists or may hereafter be amended, modified, supplemented, ratified, assumed, extended, renewed, restated, or replaced, and any and all of the agreements and documents currently executed or to be executed in connection therewith or related thereto, by and among any of the Debtors and Lender, the terms of which are referenced and incorporated herein as if set forth *in haec verba* (collectively, the "DIP Facility Documents");

    (iii)    approval of the terms and conditions of the DIP Facility and the DIP Facility Documents;

    (iv)    upon entry of a final order, approval of the Lender Pre-Petition Claim (as defined herein), including, without limitation, all outstanding letters of credit previously issued by Lender at the request of Debtors as applicants, being deemed obligations and indebtedness to Lender under the DIP Facility (all obligations and indebtedness to Lender under the DIP Facility Documents, collectively, the "DIP Obligations") and secured by the DIP Collateral (as defined below);

---

[2] The DIP Agreement in substantially the form attached to the Motion with such changes as agreed by the Debtors, the Lender, and the United States Trustee will be filed by the Debtors as a separate notice, and is incorporated herein as if set forth *in haec verba*.

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main Document   Page 2 of 50

(v)     authority for the Debtors to use Cash Collateral (as defined below) of Lender in accordance with the terms and conditions set forth herein;

(vi)    modification of the automatic stay of Bankruptcy Code § 362 (the "Automatic Stay") to the extent provided herein;

(vii)   granting of automatically perfected first priority liens and security interests to Lender to secure the DIP Obligations, and granting liens, security interests, and other adequate protection to Lender and Wells Fargo Equipment Finance, Inc. ("WFEFI") with respect to their interests in the DIP Collateral and the Prepetition Collateral (as defined below); and

(viii)  authorizing the indefeasible transfer of Cash Collateral to and for the benefit of Lender as set forth herein.

1.      The Debtors and Lender have represented to this Court that they have agreed in good faith to the terms and conditions of the DIP Agreement and this *Interim Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* (the "Financing Order").

2.      The Debtors, Lender, and WFEFI have stipulated and agreed as follows, and based upon the pleadings and evidence at the interim hearing before this Court, this Court hereby acknowledges such stipulations, and grants the relief herein, on an interim basis, pursuant to Bankruptcy Rule 4001 to prevent immediate and irreparable harm to the Debtors and their estates.  Therefore, consistent with Bankruptcy Code §§ 361, 362, 363, 364, 503(b), and 507, this Court hereby finds and Orders:

## OPPORTUNITY TO OBJECT

3.      Pursuant to Bankruptcy Rule 4001(d)(2), any objection to the entry of a final order on the Financing Motion must be filed on or before 4:00 p.m. Central Time on November 20, 2014 (the "Objection Date").  A final hearing on the Financing Motion shall take place on November 24, 2014, at 10:00 a.m., before the Honorable Tom R. Cornish, United States Bankruptcy Judge, at the United States Bankruptcy Court, Eastern District of Oklahoma, 111 W.

4th Street, 2nd Floor, Okmulgee, OK 74447 (the "Final Hearing"). Objections shall be in writing and shall be filed with the Clerk of the Bankruptcy Court so that any such objections are received on or before the Objection Date.

4. The Debtors and the Lender have represented to the Court that they have negotiated at arm's length and have acted in good faith in the negotiation and preparation of the DIP Agreement and this Financing Order, have been represented by counsel, and intend to be and are bound by their respective terms. The terms and conditions of this Financing Order and the DIP Facility Documents reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

## STATEMENT OF JURISDICTION

5. This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (D), (G), (K), (M) and (O).

## NOTICE

6. Sufficient and adequate notice of the Financing Motion and the interim hearing with respect thereto has been given to prevent immediate and irreparable harm pursuant to Bankruptcy Rules 2002, 4001, 9006, and 9014 and the Local Rules, and as required by Bankruptcy Code §§ 102, 105, 361, 362, 363, and 364. Other than the notice provided for herein, no further notice of the interim relief sought in the Financing Motion is necessary.

## FACTUAL AND PROCEDURAL BACKGROUND

7. On November 6, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the management and possession of their business and property as debtors-in-possession pursuant to

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 4 of 50

Bankruptcy Code §§ 1107 and 1108.

8. On November 10, 2014, the Court conducted the interim hearing on the Financing Motion and pronounced interim approval of the Financing Motion as set forth herein.

9. An official committee of unsecured creditors (the "Committee") has not yet been appointed in these Cases.

### The Debtors' Stipulations

10. The Debtors stipulate that:

(i) Pursuant to the Pre-Petition Claim Documents (as defined below) and applicable law, Lender holds a valid, enforceable, and allowable claim against the Debtors, as of the Petition Date, in an aggregate amount equal to at least $34,466,868.88 of unpaid principal and the outstanding amount of issued but undrawn letters of credit, $417,380.77 of accrued and unpaid interest, $668,579.75 of unreimbursed fees and expenses, plus any and all other interest, fees, costs, expenses, charges, and other claims, debts or obligations of the Debtors to Lender that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law. The Lender's claim as described in the preceding sentence together with all post-Petition Date interest, fees, costs, and charges allowed to the Lender on such claim pursuant to Bankruptcy Code § 506(b) shall collectively be referred to hereunder as the "Lender Pre-Petition Claim".

(ii) All of the Debtors' indebtedness and obligations to Lender, including, without limitation, the Lender Pre-Petition Claim, have been unconditionally guaranteed by Alan L. Ortloff, Pamela Sue Ortloff, the 1997 Pamela Sue Ortloff Trust, and the Pamela Sue Ortloff GST Exemption Residuary Trust (collectively, the "Guarantors") pursuant to certain agreements and documents including, without limitation, the Amended and Restated Continuing Guaranty dated January 15, 2014, as further set forth therein.

(iii) Pursuant to the Pre-Petition Claim Documents and applicable law, WFEFI holds a valid, enforceable, and allowable claim against Texoma, as of the Petition Date, in an aggregate amount equal to at least $2,328,185.86 of unpaid principal and $9,499.00 of unpaid interest, plus any and all other fees, costs, expenses, charges, and other claims, debts or obligations of Texoma to WFEFI that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law. WFEFI's claim as described in the preceding sentence together with all post-Petition Date interest, fees, costs, and charges allowed to WFEFI on such claim pursuant to Bankruptcy Code § 506(b) shall collectively be referred to hereunder as the "WFEFI Pre-Petition Claim," and together with the Lender Pre-Petition Claim, the "Pre-Petition Claims."

(iv) The Lender Pre-Petition Claim constitutes an allowed, legal, valid, binding, enforceable, and non-avoidable obligation of and claim against the Debtors and

Guarantors, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors and Guarantors do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and non-avoidability of the Lender Pre-Petition Claim.

(v)     The WFEFI Pre-Petition Claim constitutes an allowed, legal, valid, binding, enforceable, and non-avoidable obligation of and claim against Texoma, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and Texoma does not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and non-avoidability of the WFEFI Pre-Petition Claim.

(vi)    The Lender Pre-Petition Claim is evidenced by certain documents executed and delivered to Lender by the Debtors, including, without limitation, that certain Second Amended and Restated Credit Agreement dated January 15, 2014 (as heretofore amended and supplemented from time to time, the "Credit Agreement").

(vii)   The WFEFI Pre-Petition Claim is evidenced by certain documents executed and delivered to WFEFI by Texoma, including, without limitation, the Master Loan and Security Agreement dated December 11, 2012 (the "WFEFI Loan and Security Agreement") and the Loan Schedule to Master Loan and Security Agreement dated December 11, 2012 (the "Loan Schedule," and together with the WFEFI Loan and Security Agreement and as each may have been heretofore amended and supplemented from time to time, the "WFEFI Credit Agreement").

(viii)  The Credit Agreement, the WFEFI Credit Agreement, and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, and other instruments or documents executed in connection therewith or related thereto shall be referred to herein collectively as the "Pre-Petition Claim Documents."[3]   The Pre-Petition Claim Documents are genuine, valid, existing, legally enforceable and admissible in the Cases for all purposes.

(ix)    Subject only to Prior Liens (as defined below) (if any), the Lender Pre-Petition Claim evidenced by the Pre-Petition Claim Documents is secured by perfected first priority liens and security interests in, *inter alia*, any and all assets and property of the Debtors, now owned or hereafter acquired, real and personal, and the proceeds and products thereof (collectively, the "Lender Pre-Petition Collateral"),  including, without limitation, the following presently-owned and after-acquired personal property:  (a) accounts, (b) accessions, (c) chattel paper (both tangible and electronic), (d) commercial tort claims, (e) commodity accounts, (f) commodity contracts, (g) deposit accounts, (h)

---

[3] True and correct copies of certain of the Pre-Petition Claim Documents are retained by the Debtors and will be made available to interested parties upon request.

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 6 of 50

documents, (i) equipment, (j) financial assets, (k) fixtures, (l) general intangibles, (m) goods, (n) intellectual property, (o) instruments, (p) inventory, (q) investment property, (r) letters of credit, (s) letters of credit rights, (t) payment intangibles, (u) permits, (v) farm products, (w) crops, (x) timber, (y) as-extracted collateral, (z) mobile homes, (aa) health care insurance receivables, (ab) securities (certificated and uncertificated), (ac) securities accounts, (ad) securities entitlements, (ae) software, (af) supporting obligations, (ag) collateral records, (ah) insurance, (ai) the Cash Collateral, and (aj) money (as each such term may be defined in the Texas Uniform Commercial Code as of the date hereof). Lender's liens and security interests in the Lender Pre-Petition Collateral were granted pursuant to, *inter alia*, the Pre-Petition Claim Documents.

(x)     Subject only to Prior Liens (if any), the WFEFI Pre-Petition Claim evidenced by the Pre-Petition Claim Documents is secured by perfected first priority liens and security interests in, *inter alia*, all of Texoma's property described in the Loan Schedule, together with all substitutions, replacements, parts, accessories, supplies, improvements, additions and accessions now or hereafter affixed thereto or used in connection therewith, and all proceeds and products thereof, and all books and records of Texoma pertaining to such collateral (collectively, the "WFEFI Pre-Petition Collateral," and together with the Lender Pre-Petition Collateral, the "Pre-Petition Collateral"). WFEFI's liens and security interests in the WFEFI Pre-Petition Collateral were granted pursuant to, *inter alia*, the Pre-Petition Claim Documents.

(xi)     Lender and WFEFI have properly perfected their first priority liens and security interests and other liens in the applicable Pre-Petition Collateral (subject to Prior Liens (if any) and liens and security interests securing the DIP Facility as granted in this Financing Order) as evidenced by, among other things, the Pre-Petition Claim Documents, documents held in possession of Lender, WFEFI, and documents filed with the appropriate state, county, and other offices.

(xii)     The Debtors are in default of their debts and obligations to Lender and WFEFI under the terms and provisions of the Pre-Petition Claim Documents. These defaults exist, have not been timely cured, and are continuing. The filing of these Cases has accelerated the Pre-Petition Claims for all purposes in these Cases and in connection with Lender's and WFEFI's enforcement of their rights and remedies under the Pre-Petition Claim Documents and applicable law.

(xiii)     All cash of the Debtors' bankruptcy estates, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, that were on the Petition Date in any of the Debtors' possession, custody or control (or persons in privity with any of the Debtors), or in which any of the Debtors will obtain an interest during the pendency of these Cases whether via advances under the DIP Facility or otherwise, or which represent income, proceeds, products, rents, or profits of any of the Collateral (as defined below) constitute the cash collateral of Lender (collectively, the "Cash Collateral"). Lender has a first priority perfected lien and security interest in the Cash Collateral pursuant to the applicable provisions of the Pre-Petition Claim Documents, Bankruptcy Code §§ 363(a) and 552(b), and this Financing Order.

## NECESSITY OF CASH COLLATERAL USE AND DIP FACILITY

11.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.  The ability of the Debtors to maximize the value of their estates depends upon the Debtors' ability to use the Cash Collateral of Lender.

12.     Without the use of Cash Collateral and the DIP Facility, the Debtors will not have the funds necessary to conduct their businesses, maintain their assets, sell or otherwise liquidate their assets, provide financial information, or pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtors' estates.  Lender is willing to provide the DIP Facility to or for the benefit of the Debtors only in accordance with the terms of the DIP Agreement and this Financing Order. Accordingly, the use of Cash Collateral by the Debtors and entry into the DIP Facility is actual and necessary to preserving their estates, and the relief hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates. The Debtors require the use of Cash Collateral as provided herein.

13.     The Debtors have requested that Lender provide use of Cash Collateral and the DIP Facility in order to provide funds to be used for the purposes set forth in the Budget (as defined below), and such other purposes as permitted by this Financing Order and to which Lender consents in writing.

14.     The Debtors have sought to obtain financing from other sources and are unable to obtain credit allowable under Bankruptcy Code § 503(b)(1), or pursuant to Bankruptcy Code §§ 364(a) and (b), on terms more favorable to the Debtors than the terms of the DIP Facility.

15.     The terms of the DIP Facility and this Financing Order, including, without limitation, the related fees and priming liens granted in accordance therewith, are fair, just, and reasonable under the circumstances, are ordinary and appropriate for secured financing to debtors-in-possession, reflect the Debtors' exercise of their prudent business judgment consistent

Case 14-81334     Doc 63     Filed 11/10/14     Entered 11/10/14 15:39:16     Desc Main
Document      Page 8 of 50

with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Any credit extended under the terms of this Financing Order and the DIP Facility shall be deemed to have been extended in good faith by the Lender, as the term "good faith" is used in Bankruptcy Code § 364(e).

## CASH COLLATERAL

16.     Each Debtor shall segregate and account to Lender for all Cash Collateral that they now possess, that they have permitted to be transferred into the possession of others (if any), that is being held by those in privity with the Debtors, or that any Debtor might hereafter obtain or have any interest in. Each Debtor shall account to Lender for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Financing Order. Absent a further order of this Court or the consent of Lender, the Debtors are strictly prohibited from using the Cash Collateral except as expressly provided for herein.

17.     The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only in strict accordance with the terms and conditions provided in this Financing Order.

## DIP FACILITY

### Authorization to Obtain Credit

18.     The Debtors are hereby authorized to obtain credit only in accordance with the DIP Agreement, the DIP Facility, this Financing Order and the Budget.

19.     The Debtors are hereby authorized to obtain post-petition loans and other extensions of credit in an amount not to exceed $12,700,000.00 on an interim basis pursuant to the terms of this Financing Order and the terms of the DIP Agreement, solely for the purposes set forth in the Budget or as otherwise provided in the DIP Agreement.

20.     The DIP Facility Documents and the terms therein, including, without limitation, the fees, indemnification provisions (including, without limitation, the indemnification provision

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document       Page 9 of 50

in Section 8.16 of the DIP Agreement), and priming lien provisions, are approved in their entirety. The Debtors are authorized to execute, deliver, and perform under the DIP Facility Documents.

## Superpriority Liens and Administrative Claims

21.     Effective as of the Petition Date, Lender is entitled to and is hereby granted first priority claims, priming liens and security interests, and the protections of good faith credit providers under Bankruptcy Code §§ 364(c)(1), (c)(2), and (c)(3), 364(d)(1), and 364(e) to secure the DIP Facility, senior to all other liens and security interests, including adequate protection and replacement liens granted pursuant to the terms of this Financing Order, which priming liens and security interests shall secure all DIP Obligations (and including, without limitation, principal and any other extensions of credit, interest, fees, expenses, and any fees and expenses of Lender in these Cases, however incurred), but subject only to Prior Liens (if any) and the Carve-Out (as defined below).

22.     The first priority and priming liens and security interests securing the DIP Facility granted hereby are effective as of the Petition Date and are valid and automatically perfected first priority priming liens and security interests, subject only to Prior Liens (if any) and the Carve-Out, in and upon, and hereby are granted in and attach to, any and all assets and properties of the Debtors and the Debtors' bankruptcy estates, now owned or after acquired, real and personal, and the proceeds and products thereof (collectively, the "DIP Collateral," and together with the Pre-Petition Collateral and the Cash Collateral, the "Collateral"), including, without limitation, (1) the following presently-owned and after-acquired personal property:  (a) accounts, (b) accessions, (c) chattel paper (both tangible and electronic), (d) commercial tort claims, (e) commodity accounts, (f) commodity contracts, (g) deposit accounts, (h) documents, (i) equipment, (j) financial assets, (k) fixtures, (l) general intangibles, (m) goods, (n) intellectual

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 10 of 50

property, (o) instruments, (p) inventory, (q) investment property, (r) letters of credit, (s) letters of credit rights, (t) payment intangibles, (u) permits, (v) farm products, (w) crops, (x) timber, (y) as-extracted collateral, (z) mobile homes, (aa) health care insurance receivables, (ab) securities (certificated and uncertificated), (ac) securities accounts, (ad) securities entitlements, (ae) software, (af) supporting obligations, (ag) collateral records, (ah) insurance, (ai) causes of action, (aj) the proceeds of Avoidance Claims (as defined below), and (ak) money (as each such term may be defined in the Texas Uniform Commercial Code as of the date hereof) and (2) all presently owned or after acquired real property and improvements thereon and leases of real property; provided, however, the DIP Collateral shall not include any causes of action under Bankruptcy Code § 544, 547, and 548 ("Avoidance Claims").

23.     Additionally, on account of the DIP Facility and use of Cash Collateral, Lender is hereby granted superpriority administrative claims and all other benefits and protections allowable under Bankruptcy Code §§ 507(b) and 503(b)(1), senior in right to all other administrative claims against the Debtors' estates, except for the Carve-Out.

## Cash Collateral Accounts

24.     The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral in each of the Debtors' accounts, possession, custody or control and which any of the Debtors may receive in the future as required by the DIP Agreement.  The bank accounts of each of the Debtors that are maintained with the Lender shall be in the name of the Debtors (individually or collectively, the "Cash Collateral Accounts").

25.     The Debtors shall be prohibited from withdrawing funds from the Cash Collateral Accounts, except in strict compliance with the terms of this Financing Order and the DIP Facility.

26.     The Debtors may instruct Lender, in writing, or in another manner acceptable to

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 11 of 50

Lender, to stop payment on certain prepetition items that may be presented to Lender for payment. In the event an item is presented, and regardless of whether the Debtors have given a stop payment order, and such item is cleared, Lender will have no liability regarding same and the Debtors' sole remedy shall be recovery from the transferee.

27. Lender is authorized to debit the Debtors' accounts in the ordinary course of business without the need for further order of this Court for: (i) all checks or other items drawn on the Debtors' accounts which are cashed at such Lender's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (ii) all checks or other items deposited in one of Debtors' accounts with Lender prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (iii) all amounts outstanding, if any, owed to any Lender as service charges for the maintenance of the Debtors' cash management system.

28. Lender may rely on the representations of the Debtors with respect to whether any check, item, or other payment order drawn or issued by any of the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and Lender shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

29. Those certain existing deposit agreements between the Debtors and Lender as depository and disbursement bank shall continue to govern the postpetition cash management relationship between the Debtors and the Lender, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect. The Debtors and the Lender may, without further Order of this Court, agree to and

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 12 of 50

implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

30.     As adequate protection of the Lender's interest in the Collateral and the Cash Collateral, any and all Cash Collateral in the Cash Collateral Accounts (other than the Professional Fee Escrow) shall be transferred on a daily basis by the Debtors to Lender (and Lender is hereby authorized to effectuate such transfers) and applied against the principal balance of the Lender Pre-Petition Claim in accordance with the terms of the Pre-Petition Claim Documents, the DIP Facility Documents, and this Financing Order, until such time as the Lender Pre-Petition Claim shall have been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents.  Notwithstanding anything to the contrary herein or actual application by the Lender, all transfers to the Lender hereunder or otherwise in these Cases shall be deemed to be applied to the principal balance of the Lender Pre-Petition Claim and the DIP Obligations as determined by the Lender, and the Lender may re-allocate such applications to such principal balances at any time as determined by the Lender.

31.     All funds transferred to Lender hereunder constitute Cash Collateral of Lender. In the event that any funds so transferred are ever determined not to be Cash Collateral, and Lender expressly reserves all rights and remedies in connection with any such determination, such funds as transferred shall be subject to the liens, security interests, and superpriority claims granted to Lender hereunder for the DIP Facility, the use of Cash Collateral, and decrease in the value of the Lender's interest in the Collateral in accordance with the terms of this Financing Order.

## ADEQUATE PROTECTION OF LENDER

### Budgeted Cash Collateral Usage

32.     As adequate protection of the Lender's interest in the Collateral and for the

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 13 of 50

Debtors' use of Cash Collateral and only so long as an Event of Default (as defined below) shall not have occurred, the Debtors are authorized to and shall use the Cash Collateral (including the advances under the DIP Facility) strictly in accordance with the budget attached hereto as **Exhibit 2** (the "Budget"), subject to a permitted negative variance (i) of 10% per week on a line item basis above the projected uses set forth in the Budget, (ii) of 10% per week on a line item basis below projected sources set forth in the Budget, and (iii) of 5% per week on the net cash flow from aggregate sources and uses set forth in the Budget. Notwithstanding the foregoing, there shall be no variance on the fees and expenses of Estate Professionals (as defined below) set forth in the Budget. Prior to any transfer or use of Cash Collateral by the Debtors, the Debtors' Chief Financial Officer shall review and verify the proposed transfer or use of Cash Collateral for strict compliance with the Budget and the DIP Agreement.

33. Amounts set forth in the Budget for the fees and expenses of the Debtors' and the Committee's professionals shall be set aside weekly and held by the Debtors in a segregated account (the "Professional Fee Escrow"). The amount paid by the Debtors in any month for the fees and expenses of the Debtors' and the Committee's professionals, whether with Cash Collateral or advances under the DIP Facility, shall only be paid upon allowance or authorization by the Court from funds on deposit in the Professional Fee Escrow and shall not exceed the amount set forth in the Budget for such month.

34. Lender's consent to use of Cash Collateral and agreement to extend credit extends only to (i) amounts due under the DIP Facility and (ii) amounts actually incurred in accordance with the Budget. Upon the occurrence of an Event of Default, Lender's consent to use of Cash Collateral or agreement to extend credit shall automatically and immediately terminate and any consent for use of Cash Collateral or agreement to extend credit to satisfy projected, budgeted

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main
Document      Page 14 of 50

expenditures shall be immediately terminated and deemed withdrawn unless such Event of Default is waived by Lender in its sole and absolute discretion.

35. Except as may specifically be provided in the Budget including, without limitation, for ordinary course payroll, benefits, and expense reimbursements, the Debtors agree that no transfer of Cash Collateral shall be made to any of the Debtors' insiders, as that term is defined in Bankruptcy Code § 101. Any transfers to insiders shall be so identified in the Budget.

36. The Budget may be modified in writing only with the prior written consent of the Lender.

### Replacement and Adequate Protection Liens; Superpriority Administrative Claims

37. Taking into account all factors in these Cases, as adequate protection of the Lender's interest in the Collateral and for the Debtors' use of Cash Collateral, and subject only to Prior Liens, if any, the Carve-Out, and the Lender's liens and security interests securing the DIP Facility, Lender is hereby granted, effective as of the Petition Date, valid and automatically perfected first priority replacement liens and security interests in and upon the Collateral.

38. To the extent any adequate protection is insufficient to adequately protect the Lender's interest in the Collateral, Lender is hereby granted superpriority administrative claims and all of the other benefits and protections allowable under Bankruptcy Code § 507(b), junior only in right to any superpriority administrative claims granted to Lender on account of the DIP Facility and the Carve-Out.

39. Taking into account all factors in these Cases, as adequate protection of WFEFI's interest in the WFEFI Pre-Petition Collateral, and subject only to Prior Liens, if any, the Carve-Out, and any and all liens and security interests granted to Lender herein, WFEFI is hereby granted, effective as of the Petition Date, valid and automatically perfected second priority replacement liens and security interests in and upon the Collateral.

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
                    Document      Page 15 of 50

40.     To the extent any adequate protection is insufficient to adequately protect WFEFI's interest in the WFEFI Pre-Petition Collateral, WFEFI is hereby granted superpriority administrative claims and all of the other benefits and protections allowable under Bankruptcy Code § 507(b), junior only in right to any superpriority administrative claims granted to Lender herein and the Carve-Out.

## Automatic Perfection

41.     This Financing Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of Lender's and WFEFI's security interests in and liens on the Collateral granted and created hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of creating, filing, recording, or serving any financing statements, mortgages, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender and WFEFI by this Financing Order.

42.     To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of Lender's or WFEFI's liens and security interests granted and created by this Financing Order or otherwise would impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

43.     By virtue of the terms of this Financing Order, to the extent that Lender or WFEFI have filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors, such filings shall be

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 16 of 50

deemed to properly perfect its liens and security interests granted under this Financing Order without further action by Lender or WFEFI.

44.    If Lender or WFEFI shall, in their sole and absolute discretion, elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents to further evidence perfection of its interests in property of the estates, Lender, WFEFI, or, upon the request of Lender or WFEFI, the Debtors, are authorized and directed to execute or file, or cause to be executed or filed, all such financing statements or other documents, and the filing, recording, or service (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time of and on the Petition Date, and the signature(s) of any person(s) designated by the Debtors, whether by letter to Lender or WFEFI or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of Lender or WFEFI granted hereunder, shall bind the Debtors and their estates.  Lender or WFEFI may, in their sole and absolute discretion, file a certified copy of this Financing Order in any filing or recording office in any county or other jurisdiction in which any of the Debtors have real or personal property, and, in such event, the subject filing or recording officer is authorized and directed to file or record such documents or certified copy of this Financing Order.

## Authorization to Act

45.    The Debtors are hereby authorized and directed to perform all acts, take any action, and execute, and comply with the terms of such other documents, instruments and agreements, as Lender or WFEFI may require as evidence of and for the protection of the Collateral, or that may be otherwise deemed necessary by Lender or WFEFI to effectuate the terms and conditions of this Financing Order and the DIP Facility.

46.    Until such time as the Pre-Petition Claims and the DIP Obligations shall have

been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents, and without further order of the Court: (a) the Debtors shall use the DIP Facility proceeds and all Cash Collateral strictly in accordance with the terms of the Budget requirements and the other terms of this Financing Order; (b) the Debtors shall not, without prior order from the Court (after notice to Lender and WFEFI), engage in any transaction that is not in the ordinary course of the Debtors' business, and (c) the Debtors shall timely comply with all of the covenants set forth in the DIP Facility Documents.

## Prior Liens

47.     The security interests and liens of Lender and WFEFI granted pursuant to the terms of this Financing Order are subject to any other valid, perfected and unavoidable liens and security interests of any other secured creditor in any assets of any of the Debtors existing on the Petition Date that are senior in priority under applicable law to Lender's or WFEFI's liens and security interests granted under the Pre-Petition Claim Documents in the Pre-Petition Collateral (collectively, the "Prior Liens").  The Debtors or any other party in interest, including Lender and WFEFI, shall have the right to object to the validity, priority, or extent of any such Prior Liens, or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto.  The post-petition liens granted to Lender and WFEFI pursuant to this Financing Order shall not at any time be (a) made subject or subordinated to, or made pari passu with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under Bankruptcy Code §§ 363 or 364(d) or otherwise (except with respect to any Prior Liens), or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code § 551.

## No Additional Liens

48.     Until such time as the Pre-Petition Claims and the DIP Obligations shall have

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 18 of 50

been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents, the Debtors shall not be authorized to obtain credit secured by a lien or security interest in the Pre-Petition Collateral, the Cash Collateral, or the DIP Collateral, other than the DIP Facility, without the prior written consent of Lender or order of the Court upon reasonable notice.

## No Liability

49.     From and after the Petition Date, no act committed or action taken by Lender or WFEFI consistent with this Financing Order, or the collection of the Pre-Petition Claims, or the DIP Facility, shall be used, construed, or deemed to hold Lender or WFEFI to be in "control" of or participating in the governance, management, or operations of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of the Debtors or their businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon Lender or WFEFI under the Pre-Petition Claim Documents, the DIP Facility Documents, or this Financing Order including, without limitation, such rights and remedies as may be exercisable by Lender or WFEFI in connection with this Financing Order.

## Automatic Stay

50.     The Automatic Stay is hereby modified to the extent necessary to permit (a) the Debtors, the Lender, and WFEFI to commit all acts and take all actions necessary to implement the DIP Facility and this Financing Order, (b) all acts, actions, and transfers contemplated herein, including, without limitation, transfers of Cash Collateral and other funds to Lender by the

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 19 of 50

Debtors as provided herein, and (c) consistent with the terms of this Financing Order, to permit Lender or WFEFI, at their option, to pursue their rights and remedies as to the Collateral in accordance with the Pre-Petition Claim Documents, the DIP Facility Documents, and applicable law.

**Collateral Insurance and Deposits**

51.     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Collateral, and in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents (covering such risks in amounts as shall be satisfactory to Lender and shall name Lender and/or WFEFI (as applicable) as loss payee thereunder).

52.     To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits which are not included in the Budget without first obtaining consent of Lender), such deposits shall be, and hereby are, upon any return of same to the Debtors, subject to the first priority perfected liens and security interests of Lender in respect of the DIP Facility and the Debtors' use of Cash Collateral granted by this Financing Order.

**Reporting Requirements**

53.     The Debtors are authorized and directed to provide to Lender all of the documentation and reports required under the DIP Agreement and the other DIP Facility Documents, unless Lender waives or modifies such requirements in writing.

54.     Lender, WFEFI, and their representatives, agents, consultants and other professionals shall be permitted, in coordination with Debtors' counsel, to contact and communicate with the Debtors and their financial and sale advisors regarding potential transactions for the sale or other disposition of assets of the Debtors' estates. The Debtors shall

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 20 of 50

be responsive and employ their best efforts to cooperate in the coordination of all such contacts and communications, including, without limitation, by conducting update telephone conferences with the Debtors, their financial and sale advisors, Lender, and WFEFI upon request regarding any potential transactions for the sale or other disposition of the assets of the Debtors' estates. In the event the Debtors are not responsive and/or do not employ their best efforts to cooperate in the coordination of all such contacts and communications, then, upon notice of same by Lender or WFEFI to the Debtors, the Debtors consent to an expedited hearing upon Lender's or WFEFI's motion in which Lender or WFEFI, on behalf of their representatives, agents, consultants and other professionals, may seek to be permitted to conduct such contacts and communications without the Debtors' consent.

55.     Lender, WFEFI, and their agents and advisors shall have full access, upon reasonable notice during normal business hours, to the Debtors' business records, business premises, and to the Collateral to enable Lender, WFEFI, or their agents and advisors to (a) review, appraise, and evaluate the physical condition of the Collateral, (b) inspect and review the financial records and all other records of the Debtors concerning the operation of the Debtors' businesses, and (c) evaluate the Debtors' overall financial condition and all other records relating to the operations of the Debtors. The Debtors shall fully cooperate with Lender and WFEFI regarding such reviews, evaluations, and inspections, and shall make their employees and professionals available to Lender, WFEFI, and their agents and advisors to conduct such reviews, evaluations, and inspections.

## **Interest, Fees, Costs and Expenses of Lender and WFEFI**

56.     During the Cases, as additional adequate protection, all interest, fees, costs, and expenses, including attorneys' fees and expenses, due at any time to Lender and WFEFI under the Pre-Petition Claim Documents and/or the DIP Facility Documents (including, without

limitation, the expenses described in Section 8.3 of the DIP Agreement), as applicable, or that are incurred as a result of the Debtors' Cases to the extent incurred on and after the Petition Date (collectively, the "Lender's Costs"), may be charged by Lender and WFEFI and shall be paid by the Debtors out of the Cash Collateral or out of any DIP Facility advances, on a monthly basis, up to the aggregate amount for such Lender's Costs set forth in the Budget or, if greater than such amount in the Budget and only if approved in writing by Lender, by a Protective Advance (as defined in the DIP Agreement) which shall then be deemed to be part of the DIP Facility. The Debtors are hereby authorized and directed to pay such Lender's Costs without Lender, WFEFI, or Lender's or WFEFI's counsel having to file any further application with this Court for approval or payment. Any such Lender's Costs that constitute fees and expenses incurred by any professional retained by Lender or WFEFI shall be paid within 10 calendar days of delivery of a summary invoice to the Debtors, which may be redacted for privilege as determined by Lender and WFEFI, with a copy to the U.S. Trustee and any official committee appointed in these Cases; provided, however, that (i) any redacted fee statements shall retain all privileges irrespective of any disclosure of any privileged matter, and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in these Cases or otherwise, (ii) if the Debtors, U.S. Trustee, or any official committee objects to the reasonableness of such fees and expenses and cannot resolve such objection within 10 business days of service of such summary invoice(s), the Debtors, U.S. Trustee, or any official committee, as the case may be, shall file and serve upon such professional an objection with the Court (a "Fee Objection") limited to the issue of the reasonableness of the disputed fees and expenses within 10 calendar days of the delivery of such summary invoice; (iii) if the Debtors, U.S. Trustee, or any official committee fails to object to the reasonableness of such fees and expenses within 10 calendar

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 22 of 50

days, any objection of the Debtors, U.S. Trustee, or any official committee, as the case may be, shall be waived, and (iv) the Debtors shall timely pay in accordance with this Financing Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed. Payments of Lender's Costs may be effectuated directly by the Lender and all such payments shall constitute advances under the DIP Facility. All Lender's Costs owed to Lender, regardless of whether or not such Lender's Costs are set forth in the Budget and including, without limitation, all fees referred to in the DIP Facility Documents (including, without limitation, all attorneys' and other professionals' fees and expenses), shall constitute obligations under the DIP Facility and shall be secured by the Collateral and afforded all priorities and protections afforded to the DIP Facility under this Financing Order and the DIP Facility Documents.

### Professional Fees of the Estates

57.     Lender hereby consents to the professionals retained pursuant to an order of this Court by the Debtors or the Committee (collectively, the "Estate Professionals") retaining any retainers held as of the Petition Date, provided that such retainers are used first for payment of allowed fees and expenses of such firms holding such retainers prior to any payment from the Professional Fee Escrow. Lender and WFEFI consent, subject to the terms and conditions set forth in this Financing Order, to a carve out from their Collateral for the payment of (i) fees payable to the United States Trustee pursuant to 28 U.S.C. 1930 and (ii) the allowed professional fees and expenses of Estate Professionals in an amount not to exceed (a) the amounts set forth in the Budget and paid into the Professional Fee Escrow to be used to pay fees earned and expenses incurred prior to the occurrence of an Event of Default, plus (b) an aggregate amount not to exceed $30,000.00 to be used to pay fees earned and expenses incurred subsequent to the

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main
Document      Page 23 of 50

occurrence of an Event of Default (collectively, the "First Carve-Out"). Payments from the First Carve-Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of Estate Professionals. Lender and WFEFI additionally consent, subject to the terms and conditions set forth in this Financing Order, to a carve out from their Collateral solely in the event that the Cases convert to cases under chapter 7 of the Bankruptcy Code (the "Second Carve-Out," and together with the First Carve-Out, the "Carve-Out") for:

> (i)    if the Cases have not been substantively consolidated, the amounts of $25,000 for the estate of Texoma, $7,500 for the estate of Clint-Co, and $7,500 for the estate of Clint Williams, *minus* any unused amount of the First Carve-Out; *or*

> (ii)   if the Cases have been substantively consolidated, the amount of $25,000 for the consolidated Debtors' estates *minus* any unused amount of the First Carve-Out.

58.    So long as no Event of Default shall have occurred and be continuing, the Debtors shall be permitted to pay Budgeted compensation and reimbursement of expenses allowed and payable under Bankruptcy Code § 330 and §331, as the same may be due and payable and from the Professional Fee Escrow. Other than the Carve-Out set forth above, Lender and WFEFI do not consent to any carve-out from their Collateral for payment of any fees and expenses of the Estate Professionals.

59.    Until such time as the Pre-Petition Claims and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents, any remaining unapplied retainer funds at the conclusion of an Estate Professional's engagement shall be immediately returned to Lender as Lender's Cash Collateral. Any and all payments of fees and expenses to any Estate Professionals or use of Cash Collateral shall constitute diminution in the value of the Collateral for all purposes including all adequate protection and superiority claims granted under the Bankruptcy Code and this

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 24 of 50

Financing Order. Lender and WFEFI expressly retain the right to object to any fees or expenses of any Estate Professional as to reasonableness or on any other grounds.

60. Notwithstanding the foregoing, and irrespective of the Carve-Out, in no event shall Cash Collateral, the Carve-Out, the Professional Fee Escrow, or the proceeds of any loans, advances, or other funds made available by the Lender to or for the benefit of the Debtors be used for the payment or reimbursement of any fees, expenses, costs or disbursements of any Estate Professional or other persons incurred with the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Pre-Petition Claims, the Pre-Petition Claim Documents, the DIP Facility, the DIP Facility Documents, this Financing Order, or any liens or security interest granted thereby or with respect thereto, or any other rights or interests of the Lender or WFEFI under any Pre-Petition Claim Document or DIP Facility Document, (b) investigating, asserting, prosecuting or the joinder in any claims or causes of action against the Lender, WFEFI, or any of their officers, directors, employees, affiliates, agents, attorneys, or equity holders (whether arising under state law, the Bankruptcy Code or any other federal or foreign law); (c) preventing, enjoining, hindering or otherwise delaying the Lender's or WFEFI's enforcement of the Pre-Petition Claim Documents, the DIP Facility Documents or this Financing Order or any realization upon any Collateral (unless such enforcement or realization is in direct violation of an explicit provision in any DIP Facility Document or this Financing Order); (d) incurring indebtedness except as permitted by the DIP Facility Documents or this Financing Order; (e) modifying the Lender's or WFEFI's rights under any DIP Facility Documents or this Financing Order without Lender's consent; (f) asserting or declaring any liens or security interests granted under any of the Pre-Petition Claim Documents, the DIP Facility Documents, or

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 25 of 50

this Financing Order to have a priority other than the priority set forth herein or therein; (g) asserting, prosecuting or the joinder in, any action or other proceeding seeking to grant a lien or security interest senior to, or on parity with, the liens and security interests of Lender or WFEFI in the Collateral or any portion thereof without the Lender's consent; (h) asserting or declaring any of the Pre-Petition Claim Documents, DIP Facility Documents, or this Financing Order to be invalid, not binding or unenforceable in any respect; or (i) using Cash Collateral or selling any Collateral except as specifically permitted in the DIP Facility Documents or this Financing Order. Notwithstanding the foregoing, Cash Collateral or DIP Facility advances deposited into the Professional Fee Escrow may be used to pay the fees earned and expenses incurred of counsel to the Committee in an amount not to exceed $10,000.00 for reviewing the Pre-Petition Claims, the Pre-Petition Claim Documents, and any liens or security interest granted thereby.

## No Surcharge

61.     No costs or expenses of administration which have or may at any time be incurred in these Cases (or in any successor chapter 7 case) shall be charged against Lender, WFEFI, their claims or the Collateral pursuant to Bankruptcy Code § 506(c) without the prior written consent of Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by Lender. Lender and WFEFI shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

## EVENTS OF DEFAULT/REMEDIES

62.     The occurrence of any of the following shall constitute an Event of Default under this Financing Order upon notice to the Debtors by WFEFI solely with respect to subsection (f) of this paragraph or otherwise by Lender: (a) any default, violation, or breach by any of the Debtors of any of the terms of this Financing Order; (b) the occurrence of the Expiration Date (as defined below), maturity, termination, expiration, or non-renewal of this Financing Order or the

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 26 of 50

DIP Facility as provided for herein or in any of the DIP Facility Documents; (c) the failure to meet any of the Sale Milestones (as defined in the Schedule of Sale Process Items attached hereto as Exhibit 3); (d) any challenge to the extent, validity, priority, or unavoidability of Lender's or WFEFI's liens securing the Pre-Petition Claims and/or the DIP Facility is commenced by the Debtors or an order is entered sustaining any such challenge commenced by any party other than the Debtors; (e) the occurrence of any default or event of default under the DIP Agreement or any other DIP Facility Document; or (f) the failure of the Debtors to make any payments to WFEFI that are set forth in the Budget and that are required to be paid under this Financing Order (any of the foregoing events of default being referred to in this Financing Order, individually, as an "Event of Default", or severally, as "Events of Default").

63.    Immediately upon the occurrence of any Event of Default, and at all times thereafter, and without further act or action by Lender, or any further notice, hearing, or order of this Court: (a) Lender may terminate any and all obligations of Lender in connection with the DIP Facility or under this Financing Order and the DIP Facility Documents, (b) Lender may declare all or any part of the DIP Facility to be immediately accelerated and due and payable for all purposes, rights, and remedies, and (c) the Debtors' authority to use Cash Collateral shall immediately terminate.

64.    Furthermore, upon the occurrence of any Event of Default, the Debtors do not object to any request for expedited relief from the Automatic Stay, or any such requested relief from the Automatic Stay, by Lender, or by WFEFI solely with respect to subsection (f) of paragraph 62, where Lender or WFEFI (as applicable) request to be authorized, in their sole and absolute discretion, to take any and all actions and remedies that Lender or WFEFI may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 27 of 50

any other property of any of the estates of the Debtors, including, without limitation, (i) any right or remedy set forth in the DIP Facility Documents, without limitation, or this Financing Order, including, without limitation, the Alternative Disposition Procedures (as defined in the Schedule of Sale Process Items attached hereto as Exhibit 3), (ii) any right or remedy that the Lender or WFEFI may deem appropriate to proceed against, take possession of, foreclose upon, sell (in whole or in part), protect, and realize upon the Collateral and any other property of any of the Debtors' estates upon which the Lender or WFEFI have been or may hereafter be granted liens and security interests to obtain repayment of the DIP Facility and the Pre-Petition Claims, (iii) the commencement of actions for specific performance and for the foreclosure upon any Collateral, (iv) the sale of the Collateral, or any portion thereof, either as a whole or in part, at private or public auction, and the Lender and WFEFI shall have the right to purchase the Collateral at same by credit bidding all or a part of their debt or otherwise, (v) taking possession of the Collateral, and the exercise, without interference, of any rights of the Debtors in the management, possession, operation, protection or preservation of the Collateral, (vi) the receipt of proceeds from the sale of any Collateral, (vii) the direction of the payment for any purchase of the Collateral directly to the Lender or WFEFI, as applicable, (viii) the right of setoff and recoupment as to any funds of the Debtors' estates held by Lender, (ix) the right to appoint a chief restructuring officer of the Debtors acceptable to the Lender, and the Debtors hereby consent to same, (x) if appropriate, the right to seek and obtain the appointment of a receiver over the Debtors and/or the Collateral, and (xi) the right to reproduce, copy, download, or otherwise take possession of any records or data, tangible or electronic, constituting Collateral; provided that the Lender or WFEFI shall not be obligated to take title to any of the Collateral in the pursuit of any of the Lender's or WFEFI's rights and remedies and the Debtors shall

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 28 of 50

cooperate with the Lender and WFEFI in conjunction with the exercise of any right and the pursuit of any remedy by Lender and WFEFI, without limitation.

65.     Upon or after the occurrence of any Event of Default, Lender may, in its sole and absolute discretion, advance funds to the Debtors, and all such advances (i) shall not constitute a waiver, limitation, or modification of Lender's rights and remedies pursuant to the Pre-Petition Claim Documents, the DIP Facility Documents, this Financing Order, and applicable law and (ii) shall be and hereby are granted all of the protections granted to Lender under this Financing Order in connection with the DIP Facility.

## OTHER TERMS

66.     Each of the terms, provisions, and agreements set forth in the Schedule of Sale Process Items attached hereto as **Exhibit 3** are approved, authorized, and ordered in their entirety.  The Schedule of Sale Process Items attached hereto as **Exhibit 3** is incorporated herein by reference in its entirety as if set forth *in haec verba.*

67.      The Debtors and the Lender are authorized to implement, in accordance with the terms of the DIP Facility Documents, any modifications or amendments to any DIP Facility Document which are not material and adverse to the Debtors.  Any modifications or amendments of any DIP Facility Document which are material and adverse to the Debtors shall be subject to prior approval by this Court upon motion by the Debtors.

68.     Other than any Prior Liens and the Carve-Out, no priority claims shall be allowed that are or will be prior to or on parity with the superpriority claims or secured claims of Lender and WFEFI against the Debtors and their estates arising from the Pre-Petition Claim Documents, the DIP Facility Documents, and this Financing Order.

69.     No obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Obligations or the DIP Facility shall be avoidable or

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 29 of 50

recoverable from Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

70.     Except for the reasonable and necessary sale of inventory in the ordinary course of the Debtors' business and as may be provided for in the Budget and consistent with the terms of the DIP Agreement, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any of the Collateral, without the prior written consent of Lender.

71.     All post-petition advances under the DIP Agreement are made in reliance on this Financing Order and so long as the DIP Obligations and the Pre-Petition Claims remain unpaid, there shall not at any time be entered in the Debtors' Cases any other order that, except as consented to by Lender in writing, (a) authorizes the use of Cash Collateral or the sale, lease, or other disposition of the Collateral unless the cash proceeds will indefeasibly pay the Pre-Petition Claims and the DIP Obligations in full, (b) authorizes the obtaining of credit or the incurring of indebtedness secured by a lien or security interest in property in which Lender or WFEFI holds or asserts liens or security interests, or (c) grants to any claim a priority administrative claim status that is equal or superior to the superpriority status granted to Lender and WFEFI herein.

72.     The terms hereunder and under the DIP Facility Documents, the security interests and liens granted to Lender and WFEFI under this Financing Order, and the rights of Lender and WFEFI pursuant to this Financing Order with respect to the Collateral, and treatment of the Pre-Petition Claims shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtors without the prior written approval of Lender.

73.     The terms and provisions of this Financing Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to chapter 7 or dismissing the Debtors' Cases, except for the Debtors' authority to use Cash Collateral and any obligations

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
                    Document        Page 30 of 50

of Lender under the DIP Facility Documents (all of which shall immediately terminate upon entry of such an order). The terms and provisions of this Financing Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Financing Order and the DIP Facility Documents, shall continue in this or any superseding case under the Bankruptcy Code of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Financing Order until such time as the Pre-Petition Claims and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and the DIP Facility Documents and Lender shall have no further obligation or financial accommodation to the Debtors.

74.     The provisions of this Financing Order shall inure to the benefit of the Debtors, Lender, and WFEFI, and they shall be binding upon (a) the Debtors and their successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtors or with respect to property of the estates of the Debtors, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case, and (b) all creditors of the Debtors and other parties in interest.

75.     If any or all of the provisions of this Financing Order are hereafter modified, vacated, or stayed without the prior written agreement of Lender, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtors to Lender before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to any of the DIP Facility Documents. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to Lender before the effective date of such modification, vacation, or stay shall be

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 31 of 50

governed in all respects by the original provisions of this Financing Order, and Lender shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein and pursuant to the DIP Facility Documents with respect to all such indebtedness, obligations, or liabilities.

76.     To the extent the terms and conditions of the DIP Facility Documents are in express conflict (as opposed to being additive, limiting, or more specific than this Financing Order) with the terms and conditions of this Financing Order, the terms and conditions of this Financing Order shall control.

77.     No approval, agreement, or consent requested of Lender or WFEFI by the Debtors pursuant to the terms of this Financing Order or otherwise shall be inferred from any action, inaction, or acquiescence of Lender or WFEFI other than a writing acceptable to Lender and/or WFEFI (as applicable) that is signed by Lender and/or WFEFI (as applicable) and expressly shows such approval, agreement or consent, without limitation.  Nothing herein shall in any way affect the rights of Lender and/or WFEFI (as applicable) as to the Guarantors or any non-Debtor entity, without limitation.

78.     Nothing herein shall be deemed or construed to waive, limit, or modify the rights of Lender and/or WFEFI (as applicable) to obtain further adequate protection and other statutory protections for the use of the Collateral and Cash Collateral, or to seek other relief in these Cases in accordance with any provision of the Bankruptcy Code or applicable law.  Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of Lender and WFEFI afforded pursuant to the Bankruptcy Code.

79.     This Financing Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by Lender,

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document      Page 32 of 50

WFEFI, and the Debtors without the necessity of entry into the docket sheet of these Cases. To the extent any findings may constitute conclusions, and vice versa, they are hereby deemed as such.

80.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Financing Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

81.     All headings in this Financing Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

## RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT

82.     Parties-in-interest (other than the Debtors) that have or have been granted standing shall have 60 days from the date of entry of this Financing Order (or, in the case of the Committee, if appointed, 60 days from the date of appointment of the Committee) to file a complaint pursuant to Bankruptcy Rule 7001 asserting a claim or cause of action arising out of the Pre-Petition Claim Documents, or otherwise challenging the extent, priority, validity, perfection, amount, or allowability of Lender's and WFEFI's claims or security interests, arising out of or related to the Pre-Petition Claim Documents or the transactions related thereto. Such complaint, if filed, shall be diligently pursued by such party in interest or the Committee, as applicable.

83.     Otherwise, if no action is commenced or pursued in accordance with the deadlines in the immediately preceding paragraph or such deadlines are not extended in writing by the Lender in its sole and absolute discretion, all of the Debtors' stipulations and affirmations of the allowance, priority, extent, and validity of Lender's and WFEFI's claims, liens, and interests, of any nature set forth in this Financing Order and the Debtors' waivers and releases as contained in

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 33 of 50

the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Financing Order shall be of full force and effect and forever binding upon the Debtors' bankruptcy estates and all creditors and parties-in-interest of these Cases, including, without limitation, upon any creditors or parties-in-interest that did not have or were not granted standing prior to such deadlines. Notwithstanding the foregoing and regardless of the timely commencement of an action as contemplated in paragraph 82, the Debtors' stipulations and affirmations of the allowance, priority, extent, and validity of Lender's and WFEFI's claims, liens, and interests, of any nature set forth in this Financing Order and the Debtors' waivers and releases as contained in the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Financing Order shall be in full force and effect with respect to any claims or causes of action not timely raised within the deadlines set forth in paragraph 82 above.

## WAIVER OF CLAIMS; INDEMNIFICATION

84.     EACH OF THE DEBTORS (IN THEIR OWN RIGHT AND, SUBJECT TO THE RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT SECTION IMMEDIATELY ABOVE, ON BEHALF OF THEIR ESTATES, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS, IN EACH CASE TO THE EXTENT PERMITTED BY APPLICABLE LAW) (COLLECTIVELY, THE "RELEASING PARTIES") HEREBY RELEASES, ACQUITS, FOREVER DISCHARGES AND COVENANTS NOT TO SUE LENDER, WFEFI, AND LENDER'S AND WFEFI'S REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (THE "RELEASED PARTIES") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main
Document     Page 34 of 50

ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES THROUGH THE DATE OF THIS FINANCING ORDER, AT LAW OR IN EQUITY, BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING BANKRUPTCY CODE CHAPTER 5 CAUSES OF ACTION, WHETHER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED, BUT EXCLUDING OBLIGATIONS UNDER THE DIP FACILITY ARISING AFTER THE DATE OF THIS FINANCING ORDER (COLLECTIVELY, THE "RELEASED CLAIMS").  THE DEBTORS ON BEHALF OF THE RELEASING PARTIES FURTHER COVENANT NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM.  THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.  NOTWITHSTANDING THE RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES CONTAINED ABOVE IN THIS PARAGRAPH, SUCH RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES SHALL BE DEEMED ACKNOWLEDGED AND REAFFIRMED BY THE DEBTORS EACH TIME THERE IS AN ADVANCE OF FUNDS, EXTENSION OF CREDIT, OR FINANCIAL ACCOMMODATION UNDER THIS FINANCING ORDER AND THE DIP FACILITY

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main
Document      Page 35 of 50

DOCUMENTS.

85.     DEBTORS SHALL AND DO HEREBY, JOINTLY AND SEVERALLY, INDEMNIFY AND HOLD EACH OF THE RELEASED PARTIES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, SUITS, JUDGMENTS, COSTS, AND EXPENSES, INCLUDING, WITHOUT LIMITATION, REASONABLE ATTORNEYS' FEES, ARISING OUT OF OR FROM OR RELATED TO ANY OF THE PRE-PETITION CLAIM DOCUMENTS AND DIP FACILITY DOCUMENTS.  IF ANY ACTION, SUIT, OR PROCEEDING IS BROUGHT AGAINST ANY OF THE RELEASED PARTIES, DEBTORS SHALL, AT LENDER'S OR WFEFI'S REQUEST, DEFEND THE SAME AT THEIR SOLE COST AND EXPENSE, SUCH COST AND EXPENSE TO BE A JOINT AND SEVERAL LIABILITY OF DEBTORS, BY COUNSEL SELECTED BY LENDER.

86.     Notwithstanding any due diligence period granted to other parties in interest herein, as a result of the Debtors' review of the Pre-Petition Claim Documents and the facts related thereto, the Debtors shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Pre-Petition Claim Documents, the DIP Agreement, or any transactions or dealings related to same.

### NOTICE; EXPIRATION DATE/MATURITY

87.     The Debtors' proposed counsel shall serve this Financing Order on all of the following parties: (a) the Office of the United States Trustee; (b) the attorneys for Lender and WFEFI; (c) all creditors known to the Debtors who have or may assert liens against any of the Debtors' assets; (d) the United States Internal Revenue Service; (e) the 20 largest unsecured creditors of the Debtors; and (f) all parties in interest who have filed a notice of appearance or

Case 14-81334   Doc 63   Filed 11/10/14   Entered 11/10/14 15:39:16   Desc Main
Document     Page 36 of 50

upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules.

88.     Lender's consent and Debtors' authority to use Cash Collateral and Lender's commitment to provide credit under the DIP Agreement and this Financing Order, subject to the funding and Budget limitations above, shall be effective upon entry of this Financing Order to and including the earlier of: (a) notice of the occurrence of an Event of Default or (b) November 24, 2014, at 4:00 p.m. (Central Time), at which time all of the Debtors' authority to use Cash Collateral and to obtain credit under the DIP Agreement and this Financing Order shall terminate, as shall Lender's obligation to continue funding the DIP Facility, unless extended by written agreement of the parties hereto, a copy of which with an updated Budget shall be promptly filed with this Court by the Debtors (the "Expiration Date").

89.     **THIS ORDER IS EFFECTIVE IMMEDIATELY**.

###

Case 14-81334     Doc 63     Filed 11/10/14     Entered 11/10/14 15:39:16     Desc Main
Document     Page 37 of 50

**AGREED TO AND ACCEPTED BY:**

*/s/Mark A. Craige*
Mark A. Craige, OBA #1992
Michael R. Pacewicz, #18794
Crowe & Dunlevy, a Professional Corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma 74103-3313
Tel.:918.592.9800
Fax: 918.592.9801
e-mail: mark@law-office.com
michael.pacewicz@crowedunlevy.com

and

William H. Hoch, OBA # 15788
Crowe & Dunlevy, a Professional Corporation
Braniff Building
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Tel.: (405) 235-7700
Fax: (405) 239-6651
e-mail:  will.hoch@crowedunlevy.com

**PROPOSED COUNSEL FOR DEBTORS**


*/s/William L. Wallander*
William L. Wallander, *admitted pro hac vice*
Bradley R. Foxman, *admitted pro hac vice*
Vinson & Elkins L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Tel.: (214) 220-7700
Fax:  (214) 220-7716
bwallander@velaw.com; bfoxman@velaw.com

**COUNSEL TO WELLS FARGO BANK, N.A. AND
WELLS FARGO EQUIPMENT FINANCE, INC.**

*/s/Katherine Vance*
Katherine Vance, OBA #9175
Assistant United States Trustee
Paul R. Thomas
Trial Attorney
224 South Boulder, Suite 225
Tulsa, OK 74103
Tel.: (918) 581-6686
Fax:  (918) 581-6674
Katherine.vance@usdoj.gov

**U.S. DEPARTMENT OF JUSTICE**
**OFFICE OF THE UNITED STATES TRUSTEE**

# EXHIBIT 1

## <u>[INTENTIONALLY OMITTED AND RESERVED]</u>

Case 14-81334    Doc 63    Filed 11/10/14    Entered 11/10/14 15:39:16    Desc Main
Document    Page 40 of 50

## EXHIBIT 2

## BUDGET

**Texoma Peanut Company**
**DIP Borrowing Base Forecast**

| | | Forecast 13-Nov | Forecast 20-Nov | Forecast 27-Nov | Forecast 4-Dec | Forecast 11-Dec | Forecast 18-Dec | Forecast 25-Dec | Forecast 1-Jan |
|---|---|---|---|---|---|---|---|---|---|
| **Insured Foreign Accounts** | | 6,431,765 | 7,028,372 | 8,097,694 | 8,642,147 | 9,066,699 | 9,666,392 | 10,529,977 | 9,921,657 |
| Less Ineligible | 1% | (64,318) | (70,284) | (80,977) | (86,421) | (90,667) | (96,664) | (105,300) | (99,217) |
| Eligible Insured Foreign Accounts | | 6,367,447 | 6,958,088 | 8,016,717 | 8,555,726 | 8,976,032 | 9,569,728 | 10,424,677 | 9,822,441 |
| Advance Rate | | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% |
| **Insured Foreign Available for Advance** | | 5,412,330 | 5,914,375 | 6,814,210 | 7,272,367 | 7,629,628 | 8,134,269 | 8,860,975 | 8,349,075 |
| | | | | | | | | | |
| **Uninsured Foreign Accounts** | | 376,214 | 453,615 | 583,539 | 644,034 | 691,207 | 757,839 | 853,793 | 786,202 |
| Less Ineligible | 0% | - | - | - | - | - | - | - | - |
| Eligible Uninsured Foreign Accounts | | 376,214 | 453,615 | 583,539 | 644,034 | 691,207 | 757,839 | 853,793 | 786,202 |
| Advance Rate | | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% |
| **Uninsured Foreign Available for Advance** | | 263,350 | 317,530 | 408,478 | 450,824 | 483,845 | 530,487 | 597,655 | 550,341 |
| | | | | | | | | | |
| **Domestic Accounts** | | 4,230,011 | 4,620,122 | 4,671,012 | 5,311,978 | 5,203,969 | 5,102,554 | 4,934,316 | 4,825,326 |
| Less Ineligible | 1% | (42,300) | (46,201) | (46,710) | (53,120) | (52,040) | (51,026) | (49,343) | (48,253) |
| Eligible Domestic Accounts | | 4,187,711 | 4,573,921 | 4,624,302 | 5,258,858 | 5,151,929 | 5,051,528 | 4,884,973 | 4,777,073 |
| Advance Rate | | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% |
| **Domestic Available for Advance** | | 3,559,554 | 3,887,833 | 3,930,657 | 4,470,030 | 4,379,140 | 4,293,799 | 4,152,227 | 4,060,512 |
| | | | | | | | | | |
| **Seed Accounts** | | 1,368,843 | 1,268,843 | 1,168,843 | 1,068,843 | 568,843 | 468,843 | 368,843 | 268,843 |
| Advance Rate | | 70% | 70% | 70% | 70% | 70% | 70% | 70% | 70% |
| **Domestic Available for Advance** | | 958,190 | 888,190 | 818,190 | 748,190 | 398,190 | 328,190 | 258,190 | 188,190 |
| | | | | | | | | | |
| *Total A/R* | | *12,406,833* | *13,370,951* | *14,521,089* | *15,667,002* | *15,530,718* | *15,995,627* | *16,686,929* | *15,802,028* |
| **Trade A/R Available for Advance** | | 10,193,424 | 11,007,928 | 11,971,534 | 12,941,410 | 12,890,802 | 13,286,745 | 13,869,048 | 13,148,118 |
| | | | | | | | | | |
| | | | | | | | | | |
| **Option Premiums - Unpurch Farmer Stock** | | - | - | - | - | - | - | - | - |
| Advance Rate | | 65% | 65% | 65% | 65% | 65% | 65% | 65% | 65% |
| **Option Premiums Available for Advance** | | - | - | - | - | - | - | - | - |
| | | | | | | | | | |
| **Farmer Stock less Acq Costs** | | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) |
| Advance Rate | | 65% | 65% | 65% | 65% | 65% | 65% | 65% | 65% |
| **Farmer Stock Available for Advance** | | (0) | (0) | (0) | (0) | (0) | (0) | (0) | (0) |
| | | | | | | | | | |
| **Finished Goods** | | | | | | | | | |
| Sold Finished Goods | | 12,875,871 | 13,272,724 | 13,758,994 | 13,694,533 | 13,724,136 | 14,052,858 | 13,704,742 | 12,623,162 |
| Advance Rate | | 75% | 75% | 75% | 75% | 75% | 75% | 75% | 75% |
| Sold Finished Goods for Advance | | 9,656,903 | 9,954,543 | 10,319,246 | 10,270,900 | 10,293,102 | 10,539,643 | 10,278,556 | 9,467,372 |
| | | | | | | | | | |
| Unsold Finished Goods | | 4,612,813 | 4,754,986 | 4,929,194 | 4,906,100 | 4,916,706 | 5,034,471 | 4,909,758 | 4,522,279 |
| Advance Rate | | 65% | 65% | 65% | 65% | 65% | 65% | 65% | 65% |
| Unsold Finished Goods for Advance | | 2,998,328 | 3,090,741 | 3,203,976 | 3,188,965 | 3,195,859 | 3,272,406 | 3,191,342 | 2,939,481 |
| **Finished Goods for Advance** | | 12,655,232 | 13,045,284 | 13,523,222 | 13,459,865 | 13,488,960 | 13,812,049 | 13,469,899 | 12,406,853 |
| | | | | | | | | | |
| *Total Inventory* | | *17,488,684* | *18,027,710* | *18,688,188* | *18,600,634* | *18,640,841* | *19,087,328* | *18,614,499* | *17,145,441* |
| **Total Inventory Available for Advance** | | 12,655,232 | 13,045,284 | 13,523,222 | 13,459,865 | 13,488,960 | 13,812,049 | 13,469,899 | 12,406,853 |
| | | | | | | | | | |
| **Other Assets** | | | | | | | | | |
| Cash | | - | - | - | - | - | - | - | - |
| Advance Rate | | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| Cash Available for Advance | | - | - | - | - | - | - | - | - |
| | | | | | | | | | |
| Specified Brokerage Accounts ** | | 18,953 | 18,954 | 18,955 | 18,956 | 18,957 | 18,958 | 18,959 | 18,960 |
| Advance Rate | | 50% | 50% | 50% | 50% | 50% | 50% | 50% | 50% |
| Cash Available for Advance | | 9,477 | 9,477 | 9,478 | 9,478 | 9,479 | 9,479 | 9,480 | 9,480 |
| | | | | | | | | | |
| **Total Other Assets Available for Advance** | | 9,477 | 9,477 | 9,478 | 9,478 | 9,479 | 9,479 | 9,480 | 9,480 |
| | | | | | | | | | |
| **Accounts Payable** | | - | - | - | - | - | - | - | - |
| **Outstanding Checks** | | (58,379) | (58,379) | (58,379) | (58,379) | (58,379) | (58,379) | (58,379) | (58,379) |
| | | | | | | | | | |
| **BORROWING BASE** | | | | | | | | | |
| **Line Availability** | | 22,799,753 | 24,004,310 | 25,445,854 | 26,352,375 | 26,330,862 | 27,049,894 | 27,290,047 | 25,506,072 |
| **Line Limit** | | 48,900,000 | 48,900,000 | 48,900,000 | 48,900,000 | 48,900,000 | 48,900,000 | 48,900,000 | 48,900,000 |
| | | | | | | | | | |
| **Outstanding Bank Line Balance** | | 29,215,082 | 30,699,376 | 32,092,638 | 33,405,114 | 32,981,372 | 33,742,002 | 33,324,553 | 32,264,752 |
| **Outstanding LCs** | | 6,702,000 | 6,702,000 | 6,702,000 | 6,702,000 | 6,702,000 | 6,702,000 | 6,702,000 | 6,702,000 |
| **Total Outstanding Revolving Credit Loans** | | 35,917,082 | 37,401,376 | 38,794,638 | 40,107,114 | 39,683,372 | 40,444,002 | 40,026,553 | 38,966,752 |
| | | | | | | | | | |
| **Borrowing Base Surplus (Overadvance)** | | (13,117,329) | (13,397,067) | (13,348,784) | (13,754,739) | (13,352,510) | (13,394,108) | (12,736,506) | (13,460,680) |

## Texoma Peanut Company
### DIP Cash Flow Forecast

| | Forecast 13-Nov | Forecast 20-Nov | Forecast 27-Nov | Forecast 4-Dec | Forecast 11-Dec | Forecast 18-Dec | Forecast 25-Dec | Forecast 1-Jan | DIP Based On 11-6-14 Filing Through 1-1-15 |
|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | |
| Foreign Accounts | $ 725,307 | $ 951,849 | $ 636,207 | $ 740,327 | $ 873,550 | $ 678,950 | $ 595,333 | $ 1,674,980 | 6,876,503 |
| Domestic Accounts | 974,558 | 676,236 | 1,152,924 | 241,356 | 990,331 | 983,738 | 1,188,027 | 764,248 | 6,971,418 |
| Seed Accounts | 417,034 | 100,000 | 100,000 | 100,000 | 500,000 | 100,000 | 100,000 | 100,000 | 1,517,034 |
| Load In | 879,566 | | | | 2,110,430 | | | | 2,989,996 |
| Other Receipts | - | | | | | | | | - |
| **Total Receipts** | $ 2,996,465 | $ 1,728,085 | $ 1,889,131 | $ 1,081,683 | $ 4,474,311 | $ 1,762,688 | $ 1,883,360 | $ 2,539,228 | $ 18,354,952 |
| **Disbursements** | | | | | | | | | |
| Option Premiums | $ 419,982 | $ 516,189 | $ 767,117 | $ 580,754 | $ 568,168 | $ 415,026 | $ 168,438 | $ - | 3,435,733 |
| Peanut Loan Redemptions | 1,104,161 | 1,238,744 | 1,168,793 | 867,560 | 909,366 | 1,042,792 | 684,663 | - | 7,016,079 |
| Cash Purchases/Buy-Ins | - | - | - | - | - | - | - | - | - |
| **Total Disbursements for Inventory** | $ 1,524,143 | $ 1,754,933 | $ 1,935,970 | $ 1,448,314 | $ 1,477,534 | $ 1,457,818 | $ 853,100 | $ - | 10,451,812 |
| **Operating Expenses** | | | | | | | | | |
| Acquisition Costs | $ 1,956,899 | $ 503,217 | $ 271,834 | $ 256,580 | $ 1,756,085 | $ 327,123 | $ 186,540 | $ 268,131 | 5,526,408 |
| Employee Wages and Taxes | 115,256 | 196,795 | 116,686 | 193,985 | 100,100 | 180,209 | 100,100 | 180,209 | 1,183,340 |
| Insurance | 298,100 | 234,500 | 38,500 | 148,250 | 47,700 | 135,600 | 38,500 | 64,500 | 1,005,650 |
| Property Tax | - | | | | | | | | - |
| Building Rents | 44,126 | | 4,000 | 3,400 | 4,000 | | 4,000 | 3,400 | 62,926 |
| Equipment Rents | 1,500 | 1,500 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 9,000 |
| Repairs and Maintenance | 15,000 | 15,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 90,000 |
| Maintenance Supplies | 3,000 | 3,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 18,000 |
| Packaging | 93,834 | 18,667 | 20,000 | - | 40,000 | 20,000 | 20,000 | 20,000 | 232,500 |
| Seed Treatment | - | | | | | | | | - |
| Other Supplies | 4,500 | 4,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 5,000 | 29,000 |
| Brokerage Fees | | 76,132 | | | | 121,367 | | | 197,498 |
| Manuf. and Insp. Fees | 34,592 | 9,592 | 6,395 | 53,770 | 58,720 | 57,303 | 42,873 | 44,662 | 307,907 |
| Professional Fees | 9,928 | | | 30,000 | 171,320 | | | 55,000 | 266,248 |
| Utilities | 179,800 | 161,700 | 17,800 | 7,800 | 112,800 | 20,900 | 17,800 | 7,800 | 526,400 |
| Freight Out Exp Charged | 371,406 | 215,144 | 215,144 | 178,448 | 178,448 | 178,448 | 178,448 | 131,066 | 1,646,551 |
| Other Freight | - | | | | | | | | - |
| Cold Storage | 66,784 | | | | 79,314 | | | | 146,097 |
| T&E, Adv. | 15,950 | 5,700 | 10,275 | 550 | 550 | 550 | 550 | 10,275 | 44,400 |
| Lender Expense | - | | | | | | | | - |
| Misc. Expense | 4,500 | 4,500 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 27,000 |
| EMA | 7,500 | 7,500 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 45,000 |
| **Total Operating Expenses** | $ 3,222,075 | $ 1,457,446 | $ 724,634 | $ 896,783 | $ 2,573,086 | $ 1,065,500 | $ 612,810 | $ 811,042 | 11,363,926 |
| **WFB BK COSTS & FINANCING** | | | | | | | | | |
| Interest on Post-Petition Total Debt | | | 347,864 | | | | | 386,125 | 733,989 |
| 2% Commitment Fee | 8,333 | | | 8,333 | | | | 8,333 | 25,000 |
| WFB Professional Fees | | | 250,000 | | | | | 250,000 | 500,000 |
| **Total WFB BK COSTS & FINANCING** | $ 8,333 | $ - | $ 597,864 | $ 8,333 | $ - | $ - | $ - | $ 644,459 | 1,258,989 |
| **Debt Service** | | | | | | | | | |
| Principal | $ 36,038 | $ - | $ 18,827 | $ 36,214 | $ - | $ - | $ - | $ 18,874 | 109,953 |
| Other Interest | 4,690 | | 5,099 | 4,514 | | | | 5,052 | 19,355 |
| **Total Debt Service** | $ 40,728 | $ - | $ 23,926 | $ 40,728 | $ - | $ - | $ - | $ 23,926 | 129,308 |
| **Total Disbursements** | $ 4,795,079 | $ 3,212,379 | $ 3,282,393 | $ 2,394,158 | $ 4,050,570 | $ 2,523,318 | $ 1,465,910 | $ 1,479,427 | 23,204,035 |
| **Weekly Cash Flow** | (1,799,414) | (1,484,294) | (1,393,262) | (1,312,475) | 423,742 | (760,631) | 417,450 | 1,059,801 | (4,849,083) |
| **Cumulative Cash Flow** | (1,799,414) | (3,283,708) | (4,676,970) | (5,989,445) | (5,565,703) | (6,326,334) | (5,908,884) | (4,849,083) | |

# EXHIBIT 3

## SCHEDULE OF SALE PROCESS ITEMS

Exhibit 2
US 2857330v.25

**<u>Schedule of Sale Process Items</u>**

1. Capitalized terms used but not defined in this Schedule of Sale Process Items shall have the meaning given in the *Interim Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Credit Secured by Senior Liens, and Granting Adequate Protection to Existing Lienholders* (the "<u>Financing Order</u>").

2. As a condition to the DIP Facility and as further adequate protection for the Lender and WFEFI for the use of the Collateral, the Debtors shall conduct a comprehensive marketing and sale process of their assets and businesses in accordance with each of the following requirements by the applicable date set forth below ("<u>Sale Milestones</u>"):

  a.  <u>Sales Agent.</u>  Contemporaneously with the entry of this Order, the Debtors shall obtain entry of an employment order that provides for (i) the engagement of the services of a sales agent, acceptable to the Lender in its sole and absolute discretion (such sales agent, the "<u>Sales Agent</u>"), (ii) the vesting of the Sales Agent with the duty to sell all or substantially all of the assets of the Debtors, in one or multiple transactions, free and clear of all liens and other interests in accordance with Bankruptcy Code § 363 (b) and (f) (a "<u>Sale Transaction</u>") and the Sale Milestones, and (iii) approval of an engagement agreement with the Sales Agent on terms and conditions acceptable to the Lender in its sole and absolute discretion.

  b.  <u>Data Room.</u>  On or prior to November 12, 2014, the Debtors (or Sales Agent on behalf of the Debtors) shall have opened and populated a virtual data room (the "<u>VDR</u>") with documents and other information necessary for purchasers to conduct due diligence for a potential Sale Transaction.  Potential buyers (each an "<u>Interested Party</u>" and collectively the "<u>Interested Parties</u>")that have executed confidentiality agreements, the Debtors, the Lender, and the professionals of each of the foregoing parties shall have access to the VDR.

  c.  <u>Draft Confidential Information Memorandum.</u>  On or prior to November 12, 2014, the Debtors (or Sales Agent on behalf of the Debtors) shall deliver a draft of the confidential information memorandum ("<u>CIM</u>") with respect to the Sale Transaction to the Lender, in form and substance satisfactory to the Lender in its sole and absolute discretion.

  d.  <u>Final Confidential Information Memorandum.</u>  On or prior to November 14, 2014, the Debtors (or Sales Agent on behalf of the Debtors) shall (i) distribute the CIM with respect to the Sale Transaction to the

Interested Parties and (ii) deliver a copy of the final CIM to the Lender, in form and substance acceptable to the Lender in its sole and absolute discretion.

e. <u>Order Approving Sale and Bid Procedures.</u> On or prior to November 24, 2014, the Debtors shall have obtained the entry of an order by the Court approving Acceptable Bid Procedures (as defined below) with respect to consummation of a Sale Transaction and scheduling an auction date and final sale hearing, on terms and conditions acceptable to the Lender in its sole and absolute discretion.

f. <u>Confidentiality Agreements.</u> On or prior to December 15, 2014, the Debtors (or Sales Agent on behalf of the Debtors) shall have received executed confidentiality agreements with Interested Parties, all in form and substance satisfactory to the Lender in its sole and absolute discretion, and the Debtors shall deliver to the Lender copies of such executed confidentiality agreements within 2 business days of execution.

g. <u>Auction.</u> On or prior to December 15, 2014, the Sales Agent shall conduct an auction of substantially all of the Debtors' assets. In conducting the auction, the Debtors shall first take lot bids for those assets subject to lot bids which shall be shared with the Lender in a manner acceptable to the Lender. After taking such lot bids, the Debtors shall then take bulk bids which shall be shared with the Lender.

h. <u>Order Approving Sale.</u> On or prior to December 17, 2014, the Debtor shall have obtained entry of an order by the Court approving the Sale Transaction(s) in accordance with Bankruptcy Code § 363 (b) and (f), on terms and conditions acceptable to the Lender in its sole and absolute discretion.

i. <u>Sale Consummation.</u> On or prior to December 31, 2014, the Debtors and the Interested Party (or Interested Parties) shall have closed and consummated the Sale Transaction(s) and distributed proceeds as provided hereinbelow.

3.     Each of the Sale Milestones may be extended or waived in writing by Lender in its sole and absolute discretion. The Debtors shall promptly file with the Court a notice of any such extension or waiver.

4.     Unless otherwise consented to by Lender in its sole and absolute discretion, at the closing of a Sale Transaction (a) all funds of the Debtors' estates (exclusive of funds included in the Professional Fee Escrow and, to the extent included in the Budget, administrative expenses

accrued and unpaid from the date of this Order through the closing date of the Sale Transaction) and (b) all proceeds received from the closing of a Sale Transaction shall be paid as follows:

> a. First, subject to Lender's approval, to unpaid amounts owed to the Sales Agent, pro-rated from applicable proceeds;

> b. Second, to pay indefeasibly in full any Prior Liens in the assets being sold up to the value allocated to the asset securing such Prior Lien as such allocated value is agreed upon by the holder of the Prior Lien, the Debtors, and the Lender, or, failing such agreement, in an amount determined by the Court;

> c. Third, to:

>> (i) the Lender from the Lender Pre-Petition Collateral and DIP Collateral in an amount necessary to pay indefeasibly in full the Lender Pre-Petition Claim and the DIP Obligations in a manner and application as determined by the Lender, and Lender may change such allocation at any time as determined by the Lender; and

>> (ii) WFEFI from the WFEFI Pre-Petition Collateral in an amount necessary to pay indefeasibly in full any outstanding amounts of the WFEFI Pre-Petition Claims; and

> d. Fourth, to the Debtors' estates for distribution to creditors in accordance with the Bankruptcy Code.

5. The Lender and WFEFI may each credit bid, in each of their respective sole and absolute discretion, any portion and up to the entire amount of their respective claims, including both the Pre-Petition Claims and the DIP Obligations (as applicable), at any time on any individual asset, portion of the assets, or all assets constituting their respective Collateral in conjunction with any sale of the Debtors' assets (the "Credit Bid Right"). The Lender and WFEFI shall each be a qualified and permitted bidder in all respects at any auction, and shall not be required to submit a deposit, purchase agreement, or any other deliverable or documentation to the Debtors or their representatives or agents. Upon exercise of the Credit Bid Right, the Lender and/or WFEFI (as applicable) shall not be required to take title to any individual asset, portion of the assets, or all of the assets, and the Lender and/or WFEFI (as applicable) shall have

the right to designate any person or entity in its sole and absolute discretion that shall take title to the individual asset, portion of the assets, or all of the assets that are subject to the Credit Bid Right. Except for the holders of any Prior Liens, no other person may credit bid unless the entire amount of the Lender's and WFEFI's claims, including both the Pre-Petition Claims and the DIP Obligations (as applicable), will be indefeasibly paid in full in cash on the closing of the proposed sale. In the event the Lender and/or WFEFI exercises its Credit Bid Right and the amount of the credit bid of the Lender and/or WFEFI exceeds the total amount of the highest bids for the assets subject to the Credit Bid Right, the Lender's and/or WFEFI's (as applicable) credit bid shall be deemed the highest and best bid and such credit bid shall be accepted by the Debtors and be presented for approval to the Court in accordance with the following paragraph.

6.     In the event the Lender and/or WFEFI (as applicable) exercises its Credit Bid Right and the amount of the credit bid of the Lender and/or WFEFI (as applicable) exceeds the total amount of the highest bids for the assets subject to the Credit Bid Right, Lender and/or WFEFI (as applicable) shall have the option, in each of their sole and absolute discretion, to elect at any time, including, without limitation, after the conclusion of any auction, that the Debtors undertake the "Alternative Disposition Procedures." The Alterative Dispositions Procedures are:

     a.     The Debtors, or an entity designated by Lender and/or WFEFI (as applicable) in their sole and absolute discretion, shall sell or transfer to an entity designated by Lender and/or WFEFI (as applicable)  in their sole and absolute discretion each of the Debtors' assets with respect to which the Credit Bid Right was exercised in a manner directed by Lender and/or WFEFI (as applicable) in their sole and absolute discretion, such sale or transfer shall be deemed free and clear of all liens and claims, and the Debtors' may obtain an Order from this Court approving such sale or transfer free and clear of all liens and claims as requested by the Lender and/or WFEFI (as applicable) in order to facilitate such sale or transfer;

     b.     The Debtors shall indefeasibly pay to Lender and/or WFEFI (as applicable) the proceeds from any such sales until the entire amount of Lender's and/or WFEFI's (as applicable) claim, including both the Pre-Petition Claims and the DIP Obligations (as applicable), shall have been

indefeasibly paid in full with any excess proceeds being retained by the Debtors' estates;

c.     The Debtors' estates will receive a credit towards the amount of the Lender's and/or WFEFI's (as applicable) claim, including both the Pre-Petition Claims and the DIP Obligations (as applicable), at such time as any such sale proceeds are indefeasibly paid to Lender and/or WFEFI (as applicable);

d.     The Debtors shall cooperate with Lender and/or WFEFI (as applicable) in all respects and take all necessary actions to effectuate the Alternative Disposition Procedures;

e.     The Automatic Stay shall be terminated solely as to Lender and WFEFI, and Lender and WFEFI shall be entitled to take any and all actions and exercise any and all remedies under applicable law against any assets subject by the Credit Bid Right as determined by Lender and/or WFEFI (as applicable) in its sole and absolute discretion; and

f.     The deficiency claim of Lender and/or WFEFI (as applicable) after the completion of the Alternative Disposition Procedures will be equal to the entire amount of Lender's and/or WFEFI's (as applicable) claim, including both the Pre-Petition Claims and the DIP Obligations (as applicable), minus the greater of (i) the amount of sale proceeds indefeasibly paid to Lender and/or WFEFI (as applicable) or (ii) the amount of the Lender's and/or WFEFI's (as applicable) credit bid.

7.     Provided that a Material Adverse Change[1] has not occurred and solely in the event that the Debtors have not received a bid that is qualified under sale and bid procedures with respect to consummation of a Sale Transaction in the Cases, including the Alternative Disposition Procedures, on terms and conditions, and documentation in form and substance, acceptable to the Lender in its sole and absolute discretion (the "Acceptable Bid Procedures"), with respect to any class of the Debtors' assets identified in such Acceptable Bid Procedures (each, an "Asset Class"), the Lender and WFEFI (as applicable) hereby reserve their rights to exercise their Credit Bid Right, which may include an election that the Debtors undertake the

---

[1] A "Material Adverse Change" means any material adverse change (i) in any of the items reviewed by Lender or WFEFI regarding the Debtors and their assets, (ii) in the value of the Debtors' assets that may be subject to the Credit Bid Right, or (iii) any other mater that diminishes from the economic value or proposed use of the Debtors' assets that may be subject to the Credit Bid Right.

Alternative Disposition Procedures, with respect to the assets in such Asset Class in an amount equal to the reserve price for such Asset Class set forth in the Acceptable Bid Procedures.

8.     No sale and bid procedures shall be sought by the Debtors or approved by the Court in the Cases other than Acceptable Bid Procedures.