```
------------------------------------------------------------x
                                                            :
In re                                                       :    Chapter 11
                                                            :
TEXOMA PEANUT COMPANY, et al.,                              :    Case No. 14-81334 (TRC)
                                                            :
        Debtors.¹                                           :    Jointly Administered
                                                            :
                                                            :    Ref. Docket No. ___
------------------------------------------------------------X
```

**MOTION FOR APPROVAL OF A SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND OTHER INTERESTS AND AUTHORIZING
THE ASSUMPTION AND ASSIGNMENT OF CERTAIN POTENTIAL
EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Texoma Peanut Company, Clint-Co Peanut Company, and Clint Williams Company-Western Division LLC, as debtors-in-possession of their bankruptcy estates (collectively, the "<u>Debtors</u>") file this *Motion for Approval of a Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and Authorizing the Assumption and Assignment of Certain Potential Executory Contracts and/or Unexpired Leases* (this "<u>Motion</u>"), and in support of thereof the Debtors respectfully represents to the Court as follows:

### JURISDICTION AND PROCEDURAL BACKGROUND

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases are: Texoma Peanut Company; Clint-Co Peanut Company; and Clint Williams Company-Western Division LLC.

## BACKGROUND

2. On November 6, 2014 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Oklahoma (the "Bankruptcy Court") thereby commencing the above-captioned bankruptcy cases (collectively, the "Cases").

3. The Debtors continue to operate their businesses as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. The U. S. Trustee has not yet appointed any official committees in these Cases, and no request has been made for the appointment of a trustee or examiner.

## STATEMENT OF FACTS

### Creditors with Interests in the Assets

4. Pursuant to certain documents executed and delivered to Wells Fargo Bank, N.A. ("Lender") by the Debtors, including, without limitation, that certain Second Amended and Restated Credit Agreement dated January 15, 2014 (as heretofore amended and supplemented from time to time, the "Credit Agreement"), as well as any and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, and other instruments or documents executed in connection therewith or related thereto (collectively, the "Lender Pre-Petition Claim Documents"), the Debtors' granted properly perfected first priority liens and security interests in, *inter alia*, any and all assets and property of the Debtors, now owned or hereafter acquired, real and personal, and the proceeds and products thereof (collectively the "Lender Pre-Petition Collateral") to secure the Debtors' obligations under the Lender Pre-Petition Claim Documents.

5. Pursuant to certain documents executed and delivered to Wells Fargo Equipment Finance, Inc. ("WFEFI") by debtor Texoma Peanut Company ("Texoma"), including, without

limitation, the Master Loan and Security Agreement dated December 11, 2012 (the "WFEFI Loan and Security Agreement") and the Loan Schedule to Master Loan and Security Agreement dated December 11, 2012 (the "Loan Schedule," and together with the WFEFI Loan and Security Agreement and as each may have been heretofore amended and supplemented from time to time, the "WFEFI Credit Agreement"), as well as any and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, and other instruments or documents executed in connection therewith or related thereto (collectively, the "WFEFI Pre-Petition Claim Documents"), Texoma granted WFEFI perfected first priority liens and security interests in, *inter alia*, all of Texoma's property described in the Loan Schedule, together with all substitutions, replacements, parts, accessories, supplies, improvements, additions and accessions now or hereafter affixed thereto or used in connection therewith, and all proceeds and products thereof, and all books and records of Texoma pertaining to such collateral (collectively, the "WFEFI Pre-Petition Collateral," and together with Lender Pre-Petition Collateral, the "Pre-Petition Collateral")[2] to secure Texoma's obligations under the WFEFI Pre-Petition Claim Documents to WFEFI.

6. Pursuant to the *Interim Agreed Order Authorizing Limited Use of Cash Collateral, Obtaining Post-Petition Credit Secured By Senior Liens, and Granting Adequate Protection To Existing Lienholders* [Docket No. 63] (the "Interim Financing Order"), Lender was granted first priority claims, priming liens and security interests in, *inter alia*, any and all assets and properties of the Debtors and the Debtors' bankruptcy estates, now owned or after acquired, real and personal, and the proceeds and products thereof (collectively, the "DIP

---

[2] The security interests and liens of Lender and WFEFI do not have priority over any other valid, perfected and unavoidable liens and security interests of any other secured creditor in any assets of any of the Debtors existing on the Petition Date that are senior in priority under applicable law to Lender's or WFEFI's liens and security interests in the Pre-Petition Collateral (collectively, the "Prior Liens").

Collateral,"), senior to all other liens and security interests, including adequate protection and replacement liens granted pursuant to the terms of the Interim Financing Order, to secure all DIP Obligations (as defined in the Interim Financing Order), but subject only to Prior Liens (if any) and the Carve-Out (as defined in the Interim Financing Order).

### The Debtors' Marketing and Sales Efforts

7. Since August of 2014, the Debtors, with the assistance of its advisors, have been actively marketing the sale of all of the Debtors' assets and properties (collectively, the "Assets"). Lakeshore Food Advisors, LLC (the "Sale Agent") was hired to, *inter alia,* prepare sales materials, designate potential transaction parties, handle inquiries regarding the sale of the Assets, and negotiate purchase offers. A number of parties have expressed interest in buying the Assets.

8. Many parties are also actively involved in diligence of a potential transaction with the Debtors. Currently, at least 19 parties have signed non-disclosure and confidentiality agreements and were thus granted access to comprehensive due diligence materials, including an electronic data site. The Debtors and their advisors continue to have discussions with these interested parties regarding their interest in purchasing the Assets.

9. The Debtors were previously indebted to Great Western Bank ("Great Western") and such indebtedness was secured by a mortgage lien Texoma's processing plant located in Madill, Oklahoma (the "Madill Plant") and a security interest in Texoma's equipment located in the Madill Plant (the "Madill Equipment," together with the Madill Plant, the "Great Western Collateral"). The Great Western Collateral was sold by Texoma to Golden Peanut Company, LLC ("Golden") in an arms-length sale that closed on November 4, 2014 for a sum sufficient to

effectively eliminate 100% of the total debt of approximately $11 million owed to Great Western.[3]

## The APA and Sale Motion

10. The Debtors propose to effectuate a sale of the Assets to the highest bidder, or bidders, by entry in one or multiple Asset Purchase Agreements (the "APA") that will be presented at the hearing on this Motion. The APA provides for, among other things, the sale of the Assets, or portions thereof, free and clear of any and all liens, claims, encumbrances, and other interests (the "Transaction").

11. The Debtors propose to effectuate the Transaction(s) via the process and procedures outlined in the Bid Procedures (as defined below) in order to determine the highest and best bidder or bidders to enter into the Transaction(s).

12. Contemporaneously herewith, the Debtors filed their *Motion to Approve the Procedures for the Solicitation of Offers and Approve the Form and Manner of Notice* (the "Bid Procedures Motion") by which the Debtors seek authority to, *inter alia*, (a) approve the bid procedures which are attached to the Bid Procedures Motion (the "Bid Procedures"),[4] (b) approve the form and manner of notice of the Bid Procedures, the hearing on this Motion (the "Sale Hearing"), the Objection Deadline, the respective dates, times and places for an auction, if required under the Bid Procedures, and the possible assumption and assignment of executory contracts and unexpired leases and rights thereunder, substantially in the form attached to the Bid Procedures Motion as **Exhibit B** (the "Transaction Notice"), (c) establish procedures for objections to this Motion and for determining cure amounts in connection with the assumption

---

[3] As a result of such sale, the Debtors and Great Western entered into a settlement agreement pursuant to which, among other things, Great Western released all liens and security interests in the Great Western Collateral, and provided Texoma a covenant not to sue (or to file a proof of claim against the Debtors) with respect to the unpaid indebtedness owed.

[4] Capitalized terms used but not defined herein shall have the meaning given to such terms in the Bid Procedures.

*Page 5 of 14*

US 2864255v.2

Case 14-81334    Doc 90    Filed 11/14/14    Entered 11/14/14 16:14:55    Desc Main
Document      Page 5 of 14

and assignment of executory contracts and unexpired leases and rights thereunder, (d) approve the form of the asset purchase agreement, subject to revision and modification as deemed necessary in the determination of the Debtors and the Sale Agent with approval of the Lender in order to consummate the Transaction(s), and (e) set a hearing on this Motion.

13. The Debtors propose the following timeline for its execution of the Bid Procedures and the Transaction(s):

| Event | Date and Time (if applicable) |
|---|---|
| Transaction Notice | Within 3 days of the entry of the Bid Procedures Order |
| Preliminary Indications of Interest Due | On or before November 26, 2014 |
| APA Distributed to Potential Qualified Bidders | On or before December 1, 2014 |
| Preliminary Purchase Agreement Comparison | On or before December 8, 2014 |
| Bid Deadline | On or before December 12, 2014 at 4:00 p.m. prevailing Central Time |
| Sale Hearing Objection Deadline | To be set by the Court |
| Auction | December 15, 2014 at 9:30 a.m. prevailing Central time |
| Sale Hearing | December 17, 2014 at TBD prevailing Central Time |

**RELIEF REQUESTED**

14. By this Motion, the Debtors respectfully request that this Court enter an order[5] (i) authorizing the Debtors to sell, outside the ordinary course of business and free and clear of all

---

[5] A draft of a proposed order regarding this Motion for the circumstance of a sale of substantially all assets of the Debtors to a party other than Lender or WFEFI is attached hereto as **Exhibit A** (the "Proposed Order"). The Proposed Order may be updated by the Debtors, including, without limitation, to address multiple Successful Bidders or the exercise of the Credit Bid Right by Lender or WFEFI, subject to the consent of the Lender, and an updated Proposed Order will be presented at the hearing on this Motion.

*Page 6 of 14*

*US 2864255v.2*

Case 14-81334    Doc 90    Filed 11/14/14    Entered 11/14/14 16:14:55    Desc Main
Document      Page 6 of 14

liens, claims, encumbrances, and other interests, the Assets to the Successful Bidder(s) (as defined in the Bid Procedures); and (ii) authorizing the Debtors to assume and assign the Desired 365 Contracts (as defined below), to the extent that the Successful Bidder(s) request such assumption and assignment.

15. The Debtors have determined, in the exercise of their sound business judgment, that the pursuit of a sale of the Assets to the Successful Bidder(s) in accordance with the Bid Procedures is in the best interests of the Debtors' estates and all creditors thereof. The Debtors believe that the value of the Assets is likely to be maximized and realized by the sale of the Assets as provided in the APA after completion of the process outlined in the Bid Procedures.

## **Approval of Sale Outside the Ordinary Course of Business**

16. Pursuant to Bankruptcy Code § 363(b), a debtor in possession may sell property of the estate outside the ordinary course of business, subject to approval of the Bankruptcy Court, after notice and hearing. *See* 11 U.S.C. § 363(b)(1). A debtor's decision to sell assets of the estate outside the ordinary course of business must be based on the sound judgment of the debtor. *See In re Lionel Corp.,* 722 F.2d 1063 (2d Cir. 1983)*; See Otto Preminger Films, Lt. vs. Quintex Entertainment, Inc.,* 950 F.2d 1492 (9th Cir. 1991)*; See In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986), *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

17. Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard:

    a. whether a sound business justification exists for the sale;

    b. whether adequate and reasonable notice of the sale was given to interested parties;

      c. whether the sale will produce a fair and reasonable price for the property; and

      d. whether the parties have acted in good faith.

*See, e.g., In re Weatherly Frozen Food Group, Inc.*, 149 B.R. 480, 483 (Bankr. N.D. Ohio 1992); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991).

18. Here, each of these four factors is satisfied. First, sound business reasons exist for the Debtors to sell the Assets in the proposed manner. The Debtors believe that good business reasons exist to structure the sale of the Assets as set forth in the APA and after completion of the process set forth in the Bid Procedures. The Debtors believe that the contemplated Court supervised and open auction process will likely produce the highest and best value for the Assets and the greatest recovery for their creditors.

19. The Debtors are proceeding in good faith, and will make a showing at the hearing on this Motion that the Successful Bidder(s) acted in good faith and complied with the Bid Procedures.

20. Pursuant Bankruptcy Code § 363(f), a debtor may also sell property "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

      a. applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

      b. such entity consents;

      c. such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

      d. such interest is in bona fide dispute; or

      e. such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

21. The Debtors request that the Court order that the sale of the Assets be free and clear of all liens, claims,[6] encumbrances and other interests pursuant to Bankruptcy Code § 363(f). At the hearing on this Motion, the Debtors anticipate that one of the conditions of Bankruptcy Code § 363(f) will be satisfied with respect to each person or entity that has an interest in the Assets.

22. The Interim Financing Order approved the Schedule of Sale Process Items attached thereto as <u>Exhibit 3</u> (the "<u>Sale Process Items</u>"). The Debtors ask that the Court order distribution of any sale proceeds consistent with the Sale Process Items, including, without limitation, that unless otherwise consented to by Lender in its sole and absolute discretion, at the closing of the Transaction(s) (a) all funds of the Debtors' estates (exclusive of funds included in the Professional Fee Escrow (as defined in the Interim Financing Order) and, to the extent included in the Budget, administrative expenses accrued and unpaid from the date of the Interim Financing Order through the closing date of the Transaction(s)) and (b) all proceeds received from the closing of Transaction(s) be paid as follows:

    a. First, subject to Lender's approval, to unpaid amounts owed to the Sales Agent, pro-rated from applicable proceeds;

    b. Second, to pay indefeasibly in full any Prior Liens in the assets being sold up to the value allocated to the asset securing such Prior Lien as such allocated value is agreed upon by the holder of the Prior Lien, the Debtors, and the Lender, or, failing such agreement, in an amount determined by the Court;

    c. Third, to:

---

[6] Including, without limitation, any claims relating to successor liability. The Successful Bidder(s) is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Successful Bidder(s) and the Debtors or their estates. The Successful Bidder(s) is not holding itself out to the public as a continuation of the Debtors or their estates. The Successful Bidder(s) is not a successor to the Debtors or their estates and the transactions contemplated by the Successful Bidder's purchase agreement do not amount to a consolidation, merger or de facto merger of the Successful Bidder(s) and the Debtors or their estates.

(1) the Lender from the Lender Pre-Petition Collateral and DIP Collateral in an amount necessary to pay indefeasibly in full the Lender Pre-Petition Claim (as defined in the Interim Financing Order) and the DIP Obligations in a manner and application as determined by the Lender, and Lender may change such allocation at any time as determined by the Lender; and

(2) WFEFI from the WFEFI Pre-Petition Collateral in an amount necessary to pay indefeasibly in full any outstanding amounts of the WFEFI Pre-Petition Claim (as defined in the Interim Financing Order); and

d. Fourth, to the Debtors' estates for distribution to creditors in accordance with the Bankruptcy Code.

**Possible Assumption and Assignment of Executory Contracts**

23. To facilitate and effectuate the sale of the Assets, depending upon the terms of the Successful Bid(s) received and accepted at the Auction, the Debtors may also seek to assume and assign executory contracts and unexpired leases that may be assumed by the Debtors pursuant to Bankruptcy Code § 365 and that the Successful Bidder(s) may require to be assigned by the Debtors (the "Desired 365 Contracts").

24. Pursuant to 11 U.S.C. § 365, the Debtors may assume, assume and assign, or reject any executory contract or unexpired lease of the Debtors. The question of whether to assume or reject an executory contract or unexpired lease is one of business judgment of the debtor. *See, e.g., Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d. 1303, 1309 (5th Cir. 1985). In this case, the Debtors have determined, in their business judgment, to assume and assign the Desired 365 Contracts[7] to the Successful Bidder(s) solely to the extent required by such Successful Bidder(s).

---

[7] The Debtors express no opinion as to whether such agreements do constitute executory contracts or unexpired leases that are subject to Bankruptcy Code § 365, and by this Motion do not admit the same. The Debtors intend to seek assumption and assignment of the Debtors' executory contracts and unexpired leases solely to the extent requested by Successful Bidder(s).

25. Bankruptcy Code § 365 authorizes the assumption and assignment of executory contracts, provided that any defaults under such contracts are cured and adequate assurance of future performance is provided. The payment by the Successful Bidder(s) of the amount noticed to the applicable counterparty as the maximum amount that the Successful Bidder(s) will pay to cure all defaults, if any, under executory contracts and unexpired leases and rights thereunder that the Debtors propose to assume and assign (collectively, the "<u>Cure Amounts</u>") satisfies all defaults under the Desired 365 Contracts. Accordingly, the Bankruptcy Code allows the Debtors to assume and assign the Desired 365 Contracts provided that adequate assurance of future performance is provided by the Successful Bidder(s).

26. It is well settled that the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but that a contract counterparty is not required to receive an absolute guarantee of future performance. *See, e.g.*, *In re PRK Enterprises, Inc.*, 235 B.R. 597 (Bankr. E.D. Tex. 1999); *In re Glycogensys, Inc.*, 352 B.R. 568, 578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial condition of the assignee and the likelihood that the non-Debtors party will receive the benefit of its bargain from the assignee"); *Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (adequate assurance of future performance does not mean absolute assurance that debtors will thrive and pay rent). At the hearing on this Motion, the Debtors or the Successful Bidder(s) will provide evidence that all requirements for the assumption and assignment of the Desired 365 Contracts proposed to be assigned are satisfied, including that the Successful Bidder(s) provide adequate assurance of future performance.

## **REQUEST FOR WAIVER OF STAY**

27. The Debtors respectfully request that the Court waive the stay of the effectiveness of any Order entered by the Court granting this Motion. Bankruptcy Rule 6004(h) states:

> [a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise.

Bankruptcy Rule 6006(d) states:

> [a]n order authorizing the [T]rustee to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.

28. Given the timetable for sale set forth in the Bid Procedures Motion and the Debtors' diminishing cash position, the Debtors respectfully submit that cause exists for the Court to waive the 14-day stay of Bankruptcy Rules 6004(h) and 6006(d).

## NOTICE; NO PRIOR REQUEST

29. Notice of this Motion will be provided in accordance with the order granting the Bid Procedures Motion. No prior request for the relief sought herein has been made to this, or to any other, Court.

## PRAYER

The Debtors respectfully request that this Court enter an order (i) authorizing the Debtors to sell, outside the ordinary course of business and free and clear of all liens, claims, encumbrances, and other interests, the Assets to the Successful Bidder(s), (ii) authorizing the Debtors to assume and assign the Desired 365 Contracts, to the extent that the Successful Bidder(s) request such assumption and assignment, and (iii) granting the Debtors such other and further relief to which they may be justly entitled.

Dated: November 14, 2014

        Respectfully submitted,

        **CROWE & DUNLEVY**

          */s/*Mark A. Craige
        Mark A. Craige, OBA No. 1992
        Michael R. Pacewicz, OBA No. 18794
        500 Kennedy Building
        321 South Boston Avenue
        Tulsa, Oklahoma 74103-3313
        918.592.9800 Telephone Number
        918.592.9801 Facsimile Number
        e-mail address:
        mark.craige@crowedunlevy.com
        michael.pacewicz@crowedunlevy.com

        and

        William H. Hoch, OBA No. 15788
        Braniff Building
        324 North Robinson Avenue, Suite 100
        Oklahoma City, Oklahoma 73102
        405.235.7700 Telephone Number
        405.239.6651 Facsimile Number
        e-mail: will.hoch@crowedunlevy.com

        *Attorneys for Debtors In Possession*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2014, a copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Eastern District of Oklahoma on those parties receiving electronic notice by such system.

                                               */s/*Mark A. Craige
                                                     One of Counsel

## CERTIFICATE OF CONFERENCE

I certify that on November 14, 2014, I conferred with counsel to the Lender. Counsel to the Lender supports the approval of the Bid Procedures and the related relief requested herein.

                                               */s/*Mark A. Craige
                                                     One of Counsel